## In the Matter of the Estate of Irving I. Bloomingdale, Deceased.

Surrogate's Court, New York County, December 31, 1938.

*Arthur T. O'Leary,* for Geanne Hughes Bloomingdale Butler, as executrix and trustee.

*Max D. Steuer [Sidney O. Friedman* of counsel], for Donald Bloomingdale and Rosalie B. Bloomingdale, petitioners.

*Cadwalader, Wickersham & Taft* [*Thomas B. Gilchrist* and *Daniel E. Woodhull, Jr.*, of counsel], for Richmond J. Reese, as executor, etc.

*Albert J. Hiers*, for the New Amsterdam Casualty Company, the Continental Casualty Company and the Globe Indemnity Company.

*Frederick W. McGowan*, for the National Surety Corporation.

*Thomas E. White*, for the Fidelity and Deposit Company of Maryland.

FOLEY, S. This proceeding was originally brought on for instructions to the executors and trustees as to the method of setting up the trusts in accordance with the directions contained in the will of the testator. It was consolidated with the pending accounting proceeding by an order entered pursuant to my prior decision. (*Matter of Bloomingdale*, N. Y. L. J. Dec. 6, 1938, p. 1983.)

The first question presented is the determination of the date of the setting up of Trust B, created by the testator, with income directed to be paid to his son Donald. In the proceeding brought for the construction of the will the Court of Appeals, by explicit directions, provided for the setting up of this particular trust. (*Matter of Bloomingdale*, 278 N. Y. 435.) There is to be allocated to it under the opinion of Judge RIPPEY " assets having a market value of *not less than two million dollars.*" (Italics mine.) The surrogate holds that the trust is to be set up as of January 3, 1939, and the securities to be placed within it must be valued as of that date. He overrules the contention of counsel for Mrs. Butler, the widow of the decedent and the life tenant of Trust C, that the trust should be set up and the assets valued as of the date of the death of the testator. Support for my conclusion is found not only in the decision of the Court of Appeals, referred to above, but in the recent authorities of *Matter of Clark* (251 N. Y. 458) and *Matter of Rounds* (277 id. 622, affg. 252 App. Div. 10) and *Matter of Kohler* (231 N. Y. 353).

Under the plan recommended by counsel for Mrs. Butler for the valuation as of the date of death, approximately 40,000 shares of the common stock of Bloomingdale Bros., Inc., would be allocated to the trust for Donald. That allocation, if approved by the surrogate, would have given a value to the corpus as of the date of the death of the testator of $2,000,000. By reason, however, of the shrinkage in the market value of these securities the present value of the corpus would amount to $800,000, a loss of $1,200,000. It is unnecessary to stress the violation of the testator's will which

would be caused by the approval of that recommendation. The executors are bound to fix the value of the assets at the time of the establishment of the trust fund, particularly in view of the plain inference of the decision of the Court of Appeals that Donald possessed the status of a creditor under the separation agreement between his mother and the testator and was entitled to be paid in cash or securities having a minimum market value of $2,000,000 and in no event less than $2,000,000. Regardless of the extended administration of an estate, where there are sufficient funds a creditor is entitled to be paid the full amount of his claim at the time of payment. His debt may not be satisfied by antedating the payment or by attempting to satisfy it with securities or property of a value less than the actual amount due in money. The value at the exact time of payment controls.

Evidence has been taken of the value of the assets now remaining in the estate and available for allocation to the various trusts. They consist of securities in three corporations:

(1) Bloomingdale Bros., Inc., a corporation which formerly conducted the dry goods store of that name in New York city. In recent years it has been operated by another corporation holding a majority of the stock of Bloomingdale Bros., Inc.

(2) B. Bros. Realty Corporation, a realty company which owns the land and buildings which are occupied by the dry goods store under a long term lease. This realty company also owns a storage warehouse in the borough of Queens which is likewise leased to the dry goods company. It is also the owner of a small parcel of real estate in Mt. Vernon.

(3) Lyman G. Realty Corporation, a realty holding corporation.

All of the parties have acquiesced as to the appraisal of the Bloomingdale Bros., Inc., common stock at a present market value of nineteen dollars per share. That amount is based upon actual sales and the bid and asked prices upon the New York Stock Exchange. There is testimony before the court that in the event of an attempt to sell the large holdings of the estate or even a small part thereof a lesser sum per share would be realized. In addition the actual sales of the stock have been very small. In view of the acquiescence of all of the parties I have determined that a present market valuation of nineteen dollars per share is reasonable.

The securities held by the estate in the B. Bros. Realty Corporation consist of common stock and bonds. The securities are closely held by the Bloomingdale family represented by the estate of the testator, his two brothers and certain relations to whom they have made transfers by way of gifts. For convenience of valuation all of the parties have acquiesced in a method which would combine

the stock and bonds in a common valuation, thereby avoiding the necessity for appraising the stock and bonds separately.

The testimony of three real estate experts has been submitted as to the present market valuations of the real estate held by the corporation. Various factors for fixing the present market value of the real estate and in consequence the value of the securities of the corporation have been covered by these experts. The factors, favorable and unfavorable, to be considered, among others, include the attractiveness of the existing lease, the financial standing and good will of the tenant, the possibility, on the other hand, of the reduction in the year 1946 of the rent under the terms of the lease of the dry goods store at Fifty-ninth street and Lexington avenue, the assessed value of the properties, the lack of any ready market for the sale of the stock and bonds and the separate valuation of the lands and buildings given as a matter of opinion by the experts for the respective parties.

After careful consideration of all of the elements, the surrogate is of the opinion that the bonds are of the present market value of $90 for each $100 of par value. For reasons stated above that value includes the value of the common stock.

In reaching that conclusion I have applied to the valuation of the real estate held by the corporation the tests laid down in *Heiman v. Bishop* (272 N. Y. 83); *Matter of New York Title & Mortgage Co.* (277 id. 66), and *Matter of Board of Water Supply of the City of New York* (Id. 453).

There is certain testimony of a very recent offer to purchase all of these bonds and the accompanying stock from the estate at $85 per $100 of par value. There is also evidence that that approximate value was fixed by the Federal government in 1938 in a case involving taxes arising out of the gifts made in 1933, 1934 and 1935. While these circumstances may be some evidence of value, I have preferred to disregard them entirely in the determination of the actual market value reached by me.

In the fixation of the valuation of the stock and bonds of the Lyman G. Realty Corporation, and by the application of the same tests, I find that the market value of the bonds and the accompanying common stock is the sum of $333.33 per $1,000 par value of the bonds.

(1) With the determination of these market values, the surrogate directs the following allocation of securities to Trust B: $1,111,000 of B. Bros. Realty Corporation bonds with the accompanying stock which at $90 per $100 par value amounts to $999,900; 35,087 shares of Bloomingdale Bros., Inc., stock, at $19 per share, or a total of $666,653; $1,000,000 in bonds of the Lyman G. Realty Cor-

poration with the accompanying stock, of a present market value of $333,333.33; to this must be added cash in the sum of $113.67 required to bring the total amount of trust to the minimum requirements of the will, $2,000,000.

I hold further that under the terms of the will as construed by the Court of Appeals and under the ordinary rules for the setting up of trusts in fixed pecuniary amounts that an additional sum to cover commissions of the trustees is not required to be allocated to the fund. Directions of testators in wills commonly provide for the creation of trust funds in fixed amounts of dollars. A direction to set aside a trust fund of $100,000 or any other fixed amount contemplates an intent on the part of the testator that no more than the specified amount shall be set aside and that commissions shall be paid out of the fund when set up under the command of the maker of the will.

(2) The provisions of the will and codicil in their application to Trusts A-1 and A-2 as construed by the Court of Appeals require the setting up of these trusts created for the benefit of Rosalie Banner Bloomingdale, the first wife of the testator, in priority over his widow, who is the beneficiary under Trust C. Unlike Trust B, created for Donald, these trusts were required to be set aside with sufficient assets to create fixed annual incomes. The testamentary directions, as judicially construed, compel the setting up of a fund sufficient to produce $66,600 a year, net, free from the payment of income taxes under Trust A-1, and a net income similarly free from income taxes of $5,400 per year under Trust A-2. The Court of Appeals has also directed that sufficient securities be set aside to pay the expenses of administering the trusts, and, additionally, sufficient securities to " meet all reasonable contingencies."

In obedience to this mandate the surrogate directs that there be set aside for Trust A-1 the following securities: $1,900,000 par value of B. Bros. Realty Corporation bonds with the accompanying stock, and 2,300 shares of Bloomingdale Bros., Inc. The latter allotment is made to cover the commissions of the two trustees for receiving the principal of the trust fund. There shall also be allotted to this trust, as a reserve, B. Bros. Realty Corporation bonds of the par value of $190,000. This allocation is made as a reserve to anticipate the contingency of the incomes from Trust A-1 and Trust A-2 being taxed as a unit. Under the decision of the Court of Appeals these two trusts are separate and independent, but the possibility of the assessment of a tax based upon the combined income to the same life tenant may not be disregarded.

There is also allotted 380 shares of Bloomingdale Bros., Inc., common stock. This allocation is to be earmarked as a contingent

reserve for the payment of first year taxes due to the possible ruling of the Federal tax authorities that the New York State income tax may not be taken as a deduction.

There is also allotted to Trust A-1 $175,000 par value of B. Bros. Realty Corporation bonds. These securities are allocated as a reserve to anticipate the possibility of the reduction in 1946 of the interest rate upon all of the B. Bros. Realty Corporation bonds by reason of the lowering of the rent payable to the corporation under the terms of the lease.

The income upon the foregoing securities should insure, with reasonable probability, the net income payable to the life tenant of this trust after due allowance for Federal and State income taxes, commissions and other administration expenses and " all reasonable contingencies."

Any surplus income derived from this fund will be payable, under the terms of the will, to the widow as life tenant of Trust C. Necessarily a similar direction applies to the total income derived from the foregoing reserve of $175,000 in bonds which are to be held by the trustees to await a possible reduction of interest caused by the reduction in rent in 1946. Mrs. Butler, the widow, will be entitled to the accruing income on these bonds until that year. These directions as to the payment of surplus income necessarily are based upon the assumption that the net amount of $66,600 will be available for payment to Mrs. Rosalie B. Bloomingdale as life tenant in accordance with the terms of the will.

(3) In obedience to the mandate of the Court of Appeals the surrogate directs that there be set aside for Trust A-2 the following securities: $100,000 par value of B. Bros. Realty Corporation bonds with the accompanying stock and 125 shares of Bloomingdale Bros., Inc., common stock. The latter allotment is made to cover the commissions of the two trustees for receiving the principal of the trust fund. There is also allotted $10,000 par value of B. Bros. Realty Corporation bonds as a reserve to anticipate the contingency of Trust A-1 and Trust A-2 being taxed as a unit. There is also allotted twenty shares of Bloomingdale Bros., Inc., common stock. This allocation is to be earmarked as a contingent reserve for the payment of first year taxes due to the possible ruling of the Federal tax authorities that the New York State income tax may not be taken as a deduction. There is also set apart to Trust A-2 $8,000 par value B. Bros. Realty Corporation bonds as a reserve to anticipate the possibility of the reduction in 1946 of the interest rate upon the bonds.

No direction to set up Trust C can be presently made. Under the terms of the decision of the Court of Appeals that trust was

determined to be the equivalent of the residue of the entire estate. There are unpaid debts and administration expenses which must be computed and allowed before the amount of Trust C can be established. The administration of the estate must be completed. The setting up of Trust C must, therefore, await the making of the final decree in the pending accounting proceeding of the executors and trustees.

It should be noted, also, that under the opinion of Judge RIPPEY in the proceeding construing the will, if the income of either Trusts A-1 or A-2 is less than the fixed annual amounts, the income of Trust C must be used to satisfy the deficiency in preference to participation therein by the widow. If the income of Trust C is insufficient for that purpose resort must be had to the prinicpal of that fund to make up the fixed annual amounts due to the life tenant of Trusts A-1 and A-2.

Thus, under the decision of the Court of Appeals, the entire residuary estate became a reserve for the protection of the right to income of the life tenant of Trusts A-1 and A-2.

Submit intermediate decree on notice accordingly.