In the Matter of the Application of CLARA TANENBAUM for a Construction of the Last Will and Testament of MOSES TANENBAUM, Late of the County of Westchester, Deceased; for a Decree Establishing Her Dower Right in Certain Real Property of the Said Decedent; for the Establishment of a Certain Trust Created in Said Will for Her Benefit, and for Other Relief.

CLARA TANENBAUM, Petitioner, Appellant; CLARA P. PRINCE and Others, as Executors and Trustees, etc., of MOSES TANENBAUM, Deceased, THE FIFTH AVENUE BANK OF NEW YORK, as Trustee, etc., of MOSES TANENBAUM, Deceased, SAMUEL A. TANENBAUM, HORTENSE T. FERNBERGER, CLARA P. PRINCE, LEON M. PRINCE, JR., EVELYN CLARA PRINCE, TERESE CAROL PRINCE and EDITH M. CLARK, Respondents.

Second Department, December 26, 1939.

*Max D. Steuer* [*Bertram Boardman* with him on the brief], for the appellant.

*Charles A. Houston* [*Edward F. Unger* with him on the brief], for the respondents Clara P. Prince and others, as executors and trustees, etc.

*Harry E. Herman* [*Arthur O. Ernst* with him on the brief], for the respondents Clara P. Prince, individually, Leon M. Prince, Jr., Evelyn Clara Prince and Terese Carol Prince.

*Louis H. Rowe,* for the respondent Edith M. Clark.

CARSWELL, J. Moses Tanenbaum, in 1898, was a widower with two children. He married the petitioner Clara Tanenbaum on March 20, 1898. There was no issue of that marriage. The husband and wife separated. They executed a separation agreement on June 22, 1928. It provided *inter alia* that the husband should pay the wife $1,500 a month during their joint lives. The wife agreed, in effect, to release her dower in a parcel of Manhattan real property owned by the husband. His only other parcel, in Irvington, was not included in that requirement. The husband agreed to keep in full force $100,000 of life insurance of which the wife, in effect, was made the irrevocable beneficiary. The husband also agreed " by will duly executed, or by other duly executed instrument " to establish a $300,000 trust fund, free from all State and Federal transfer, estate and inheritance taxes, the income thereof to be paid after the husband's death to the wife during her life. The corpus upon the wife's death was to devolve as directed by the husband. The wife agreed to bequeath $75,000 each to two stepchildren and one-half of certain stock to a stepson. The agreement was to bind the husband and wife, their heirs, executors, administrators and assigns. It was agreed that the engagements of the parties might be enforced by either party in an action for specific performance.

The husband made all the required payments until his death. In the meantime a statutory change was made in the rights of a spouse in the property of a deceased spouse. Dower and curtesy rights were abolished but the rights of a surviving spouse in all the property of a deceased spouse were increased. This change in the Decedent Estate Law became effective as to wills executed after August 31, 1930.

On January 5, 1937, Moses Tanenbaum executed his will. Its fourth paragraph provided for a $300,000 trust fund for the wife, as required by the separation agreement. It provided that on the wife's death the corpus was to fall into the residuary estate. It further provided that this trust fund was to have priority over all other bequests and devises and that the provisions for the widow were to be accepted by her in lieu of dower.

The husband died on October 10, 1937, and after his will was admitted to probate on October 20, 1937, it was found that his net estate was about $491,000. The widow received the $100,000 life insurance proceeds and the $300,000 trust fund was set up.

The widow procured extensions of time within which to file an election to take against the will until October 20, 1938. Meanwhile she instituted this proceeding on June 6, 1938, and in the course of it, on July 26, 1938, the surrogate ruled that her right of election was limited to $2,500 out of the trust fund corpus. Before the entry of a decree and after the trust fund had been established, the widow executed and filed a notice of election, with alternative provisions, under which she elected, under section 18 of the Decedent Estate Law, to take her intestate share in addition to the testamentary provisions for her benefit and in the event that it was ruled that she had merely a limited right to elect, then she elected to take the sum of $2,500 absolutely from the principal of the trust fund.

(1) The appellant asserts she has the dual status of a creditor of the estate and widow; that she is entitled to have deducted from the estate the $300,000 required for the trust fund and also her statutory one-third part of the balance. If this contention is sound, the bequests for the testator's children and others will be abated in whole or in part. She asserts the provisions in the separation agreement constitute her a creditor of the estate; that the testamentary or trust fund provision in the will is a recognition of her rights as a creditor and merely furnishes a means for the liquidation of those rights; and that the separation agreement leaves unimpaired her rights of election under the statute in her status as a widow of the testator. If such a dual status derives from the separation agreement and the testamentary provisions pursuant thereto, the broad right of election which she invokes under section 18 of the Decedent Estate Law may be enjoyed by her. If the benefits under the trust flow to her from and through the will and not from the agreement, then she has no status as a creditor; merely that of a widow. As a widow her rights are to be measured by the extent of the testamentary provision made for her in the will. If it equals or exceeds that required of a husband under the Decedent Estate Law, her right of election is limited to $2,500 from the corpus of the trust fund. (Dec. Est. Law, § 18, subd. 1, ¶ [b].)

The second paragraph of the separation agreement requiring the payment of $1,500 a month by the husband made the wife a potential creditor of the husband and of his estate, but as the right of the wife to receive payments ended upon the husband's death and there are no unpaid installments, she did not become a creditor under that provision. The requirement in the eighth paragraph to set up a $300,000 trust fund either by a will or another instrument for the benefit of the wife after the husband's death gave

rise to an obligation on the part of the husband which the agreement specifically authorized him to perform by a testamentary disposition. This obligation required the doing of an act for the wife having beneficial effect in the future, after the husband's decease. The doing of that act, the making of a testamentary disposition, under the terms of the agreement, could be made the subject of an action for specific performance. If there had not been such a provision, it, in any event, could have been made the subject of an equity action if the husband failed to do that which he was obligated to do under the agreement. (*Hermann* v. *Ludwig*, 186 App. Div. 287; affd., 229 N. Y. 544; *Kine* v. *Farrell*, 71 App. Div. 219; *Matter of Lally*, 210 id. 757; *Morgan* v. *Sanborn*, 225 N. Y. 454.) The engagement was not a contract to convey property. It was a promise to make a testamentary disposition. The difference has significance. (*Matter of Kidd*, 188 N. Y. 274, 278.) The breach of this obligation to make a testamentary provision would not constitute the wife a true creditor; it would merely give rise to a right in equity to enforce the obligation of the husband. If this obligation or the fruit thereof were a debt, it would not be subject to tax as part of the decedent's estate. In a kindred situation where one obligated himself in an antenuptial agreement to make such a testamentary provision and failed to do so, the claimant, enforcing her rights in equity, did not take under the agreement as a creditor, but took under the will as a beneficiary. (*Matter of Kidd, supra.*) It was said (*Matter of Howell*, 255 N. Y. 211, 215) that the claimant in the *Kidd* case " took under the will as enforced in equity and took subject to the transfer tax."

Similarly, where a husband performed an obligation in a separation agreement to make a testamentary provision for a wife, the latter was held not to be a creditor of the estate but one who took as a beneficiary under the will, and, therefore, the testamentary provision was taxable, which it would not have been if the requirement to make the testamentary provision were a debt of the estate. (*Matter of Howell, supra.*) The law with respect to taxes and contracts looks to realities. It analyzes the acts of parties and determines the intention those acts manifest. The law only has resort to fictions or distinctions to further justice and the need for such resort is not here impelled by such a consideration.

No sound reason suggests itself for making a distinction between the nature, character or effect of an obligation in a separation agreement to make a testamentary disposition when the question arises in respect of taxability and when it arises in a determination of rights between the parties to the agreement.

The intention of the parties is further revealed by the language in the separation agreement (eighth paragraph), repeated in the will (fourth paragraph), that the trust fund was to be free of all State and Federal transfer, estate and inheritance taxes. If the testamentary provision thus required was in fact a debt it would not be subject to such taxes. They would only be payable if it was an obligation to make a testamentary disposition. Both parties by the use in the separation agreement of the cited language recognized that this obligation was not a debt and that, therefore, it was subject to such taxes.

The clear purpose of the agreement was to express the complete measure of the wife's share in the husband's estate upon his death, except in one particular, the Irvington parcel. The share agreed upon was greater than the statutes exacted of a husband at the time the agreement was made. The later changes in the statutes increased the extent of a wife's right to share. Those changes did not increase the measure of participation beyond that here previously agreed upon, as the subsequently revealed size of the estate disclosed. The statutory change was, therefore, supererogatory so far as these parties were concerned, except that as shown *infra* the statute affected the Irvington parcel dower right because of the election made by the widow, and the statutory consequences thereof. The question is not here as to whether the same result, respecting a widow's rights of election, would obtain if the size of the estate revealed that the later statutory measure of participation was greater than that to which the parties agreed, whether the widow, under the agreement here involved, would then have no right of election or a broader right of election than she has been given herein.

The foregoing approach to the problem seems to make inescapable the conclusion that the trust fund requirement in the separation agreement was not intended to create a debt but was merely intended to create an obligation to make a testamentary provision (or its equivalent) for the benefit of the wife after the decedent's death, and that, therefore, the widow does not have the status of a creditor.

When the parties agreed upon a testamentary disposition the husband agreed to accord to the wife a larger share in his estate than the then existing law required of him. At that time she merely had widow's exemption rights and dower rights in the two parcels of real estate.

Subsequently the rights of a wife were changed by statute (Laws of 1929, chap. 229). Her right to dower was abolished but she was given a larger right than she theretofore possessed to share

in the husband's estate. When Moses Tanenbaum in his will complied with the separation agreement obligation he also complied with his statutory obligation, because his testamentary provision was greater than that required of him by the later statute. His testamentary provision, therefore, had the dual effect of performing his obligation under the separation agreement and the obligation to his wife created by the statute. (Cf. *Matter of Burridge*, 261 N. Y. 225, 229.) The provision having this dual effect, the wife's right of election as accorded by the surrogate, was limited to $2,500 from the principal of the trust fund. (Dec. Est. Law, § 18, subd. 1, ¶ [b].)

The cases invoked by the appellant are not to the contrary. They concern requirements in separation agreements to pay a fixed sum during the life of a wife, thereby creating upon the husband's death the status in the wife of a creditor of the estate, or they provide for the payment of a fixed sum during the life of the wife with a permissive provision that the husband may make a testamentary provision as security for the payment of the debt to the wife during her life; or they concern separation agreements where there was no mandatory obligation to make a testamentary provision for the benefit of the wife after the husband's death.

(2) The testamentary provision for the wife being greater than that required by the statute, her dower rights in the Irvington property, even though not mentioned in the separation agreement, were extinguished. This results from the election made by the widow which had the effect under the statute of a substitution of the testamentary provisions for the right of dower. (Dec. Est. Law, § 18, subd. 1, ¶ [b]; subd. 7.) This result ensues apart from the effect of the clause in the will that the provisions for the widow, if accepted, were in lieu of dower. The surrogate's ruling, therefore, that the widow had no dower in the Irvington property was correct.

(3) The surrogate's approval of the action of the executors and trustees in valuing certain securities transferred to the trust fund on the basis of the average between the bid and asked prices was proper. No persuasive reason appears for the adoption of a rule different from that which obtains in the taxation of such securities under the Federal and State regulations. The rule is one of convenience; it promotes uniformity and does no injustice.

(4) The ruling of the surrogate on the computation of income as between the trust fund and the residue of the estate on a basis of two and sixty-five one-hundredths per cent complied with the direction of the testator. He required the computation to be " on my entire estate, excluding real estate." The surrogate likewise

properly ruled that in setting up the trust fund the executors acted." with all due diligence " under all the circumstances involved herein.

(5) The surrogate correctly refused extra allowances to counsel. This proceeding was not for the construction or interpretation of the testator's will.

The decree should be affirmed, with costs to each respondent filing a brief, payable out of the estate.

Present — HAGARTY, CARSWELL, ADEL, TAYLOR and CLOSE, JJ.

Decree of the Surrogate's Court of Westchester county unanimously affirmed, with costs to each respondent filing a brief, payable out of the estate.