In the Matter of the Estate of RICHARD F. HOYT, Deceased.

Surrogate's Court, New York County, June 17, 1940,

*Satterlee & Canfield* [*William C. Scott* and *Evelyn P. Luquer* of counsel], for the petitioners.

*Root, Clark, Buckner & Ballantine* [*John M. Harlan, Leslie H. Arps, Howard C. Anderson, Jr.*, and *Loyal Leale* of counsel], for the executors, etc., of Katharine Stone Hoyt, and Eleanor Hoyt duPont and Virginia Hoyt Pierson.

*Wright, Gordon, Sachry & Parlin* [*Paul W. Williams, Robert M. Bozeman* and *John T. Sapienza* of counsel], for Martha Nicholson Hoyt, widow.

*Chadbourne, Wallace, Parke & Whiteside* [*William M. Parke* and *Jule E. Stocker* of counsel], for Erle V. Daveler, as trustee, etc., of Charles Hayden.

*Charles F. Gehrmann* [*Charles F. Gehrmann* and *William F. Roche* of counsel], for Edgar A. Doubleday, as trustee, etc., of Charles Hayden.

*Adrian P. Burke*, special guardian.

FOLEY, S.   There is presented for determination in this accounting proceeding a preliminary question arising out of certain claims

made under a separation agreement entered into between the testator and his first wife, Katharine Stone Hoyt. She died approximately fourteen months after the testator. The claimants are the executors of her estate and the children of her marriage with him. It is contended by them that the terms of the separation agreement constituted Katharine Stone Hoyt and the children creditors of the estate. Their contention is opposed by the surviving widow of the testator, Martha Nicholson Hoyt, and by the trustees of the estate of Charles Hayden, who are general creditors of the estate.

The separation agreement was executed by the parties on April 20, 1931. By its terms, among other things, it was agreed that the testator would pay to his wife annually a sum, which together with the income from her own property managed by him, would produce a total income of $200,000 over and above all income taxes. It was agreed also that on the death of either of the parties the annual payments to be made by the testator should cease. By paragraph seventh of the agreement the testator obligated himself to execute a last will and testament which would create a trust in the sum of at least $1,500,000, the income thereof to be paid to the wife, and upon her death or remarriage the principal to be paid in equal shares to their children or to the issue of any predeceased child.

Thereafter, on May 4, 1931, upon the complaint of the wife, the parties were duly divorced in the State of Nevada. By the decree of divorce the separation agreement was ratified, adopted and approved. Shortly afterwards and on June 29, 1931, the testator married Martha Nicholson Doubleday, now his widow. Subsequent to this marriage and on August 29, 1932, he executed his last will and testament. He died on March 7, 1935.

By paragraph second of his will the testator carried out the trust fund requirement of the separation agreement by providing for the creation of a trust in the sum of $1,500,000 for his first wife, as beneficiary, and his children, or their issue, as remaindermen. To his second wife he bequeathed certain articles of personal property and his residuary estate, with the provision that if his residuary estate should be less than $100,000 it should be paid to his widow outright, and if more, it should be held in trust until her death or remarriage, with remainders over.

The present net assets of the estate amount to approximately $490,000. On August 22, 1935, by a notice of election duly filed pursuant to section 18 of the Decedent Estate Law, the surviving widow of the testator exercised her statutory right to take her one-third share as in intestacy.

The claims asserted by the representatives of the estate of the first wife and by her four children are based upon the provisions of

paragraph seventh of the separation agreement. The claimants contend that they are creditors of the testator's estate and as such are entitled to priority over the claim of the widow under the exercise of her right of election under section 18 of the Decedent Estate Law. The widow and the general creditors, on the other hand, contend that these claims do not constitute debts and that the rights of the claimants under the agreement of the testator to leave a will making provisions for the benefit of his first wife and their children, cannot defeat the widow's right of election to take one-third of the net estate.

I hold upon the recent authority of *Matter of Tanenbaum* (258 App. Div. 285; leave to appeal to the Court of Appeals denied by the Appellate Division on Feb. 6, 1940, 258 App. Div. 1054, and by the Court of Appeals, 282 N. Y. 810) that the claimants did not become creditors of the estate under the provisions of the separation agreement and that their rights are accordingly not superior to those of the surviving widow.

The similarity of the present situation to that which existed in the *Tanenbaum* case is in many respects striking. In that case, as here, the testator under the separation agreement with his wife promised to pay to her certain specified amounts during their joint lives and agreed to create a trust by his will, or by other duly executed instrument, in a specific amount for her benefit for life. There, as here, it was contended that the terms of the separation agreement constituted the wife a creditor of the estate. The widow in the *Tanenbaum* case asserted that she was a creditor by virtue of the separation agreement to the extent of the amount bequeathed to her in trust under the will and that she was entitled to have allowed out of the estate the amount required for the trust fund and also her statutory one-third part of the balance. There, as here, there was no provision in the separation agreement that payments to the wife of fixed annual amounts were to continue during her lifetime, but the sums payable to her under the agreement were to terminate upon the testator's death. Justice CARSWELL, writing for the Appellate Division, said: " The requirement in the eighth paragraph to set up a $300,000 trust fund either by a will or another instrument for the benefit of the wife after the husband's death gave rise to an obligation on the part of the husband which the agreement specifically authorized him to perform by a testamentary disposition. This obligation required the doing of an act for the wife having beneficial effect in the future, after the husband's decease. The doing of that act, the making of a testamentary disposition, under the terms of the agreement, could be made the subject of an action for specific performance. If there had not been such a provision, it, in any event, could have been

made the subject of an equity action if the husband failed to do that which he was obligated to do under the agreement. (*Hermann* v. *Ludwig*, 186 App. Div. 287; affd., 229 N. Y. 544; *Kine* v. *Farrell*, 71 App. Div. 219; *Matter of Lally*, 210 id. 757; *Morgan* v. *Sanborn*, 225 N. Y. 454.) The engagement was not a contract to convey property. It was a promise to make a testamentary disposition. The difference has significance. (*Matter of Kidd*, 188 N. Y. 274, 278.) The breach of this obligation to make a testamentary provision would not constitute the wife a true creditor; it would merely give rise to a right in equity to enforce the obligation of the husband."

The authorities cited by the claimants in this proceeding have no application to the situation presented here. Great stress has been laid by them upon the case of *Matter of Bloomingdale* (278 N. Y. 435; 171 Misc. 31; affd., 258 App. Div. 881) to support their argument that they are creditors of the estate. In that case, however, the status of the first wife of the testator as a creditor arose because the separation agreement provided for the payment of fixed annual amounts to continue during her entire lifetime. Liability for her support, therefore, continued after the testator's death. It did not terminate at his death. (*Wilson* v. *Hinman*, 182 N. Y. 408; *Barnes* v. *Klug*, 129 App. Div. 192; *Matter of Fuller*, 151 Misc. 387; affd., 242 App. Div. 623; *Matter of Golding*, 127 Misc. 821; *Matter of Hoffman*, 108 id. 612.) There was no promise of the husband in the separation agreement to create a trust for the wife by any testamentary or other instrument. By the terms of his will, however, the testator did create a trust to produce the fixed annual amounts to which his former wife was entitled under the agreement. It afforded her an election to take either as a creditor of the estate or under the will. She elected to take under the will, but her status as creditor nevertheless continued. The creation of the trust merely constituted security for the debt created under the separation agreement. (*Matter of Fuller*, 151 Misc. 387; affd., 242 App. Div. 623.) In the *Bloomingdale* case also the testator agreed, under the separation agreement, to bequeath in trust for the benefit of his son, Donald, assets having a minimum value of $2,000,000, and in the event of his failure to make such provision by will, stipulated that his son should be " considered and deemed to be a creditor " of his estate and " be entitled to file a claim against the estate." It must be assumed that because of this provision for Donald Bloomingdale in the agreement, the Court of Appeals found in its decision that the testator " knew that the son could enforce the provisions of that agreement for his benefit as a creditor if he did not expressly provide for him in his will in the terms of the antecedent agreement."

Moreover, in the *Bloomingdale* case the assets of the estate were sufficient to set up the respective trusts for the former wife and son of the testator and no question as to the right of election of the surviving widow could have arisen, because the will was executed prior to the change in the statutory rights of a surviving widow, under the enactment of section 18 of the Decedent Estate Law (Laws of 1929, chap. 229, effective as to wills executed on and after Sept. 1, 1930).

The *Bloomingdale* case was cited and briefed by the appellant in the *Tanenbaum* case, in the Surrogate's Court, in the Appellate Division, Second Department, which unanimously affirmed the lower court, and also upon her application for leave to appeal to the Court of Appeals. The failure of the Court of Appeals to allow the appeal must be deemed a recognition by it of the distinction between the *Tanenbaum* and the *Bloomingdale* cases, and that the appellant's claim in the *Tanenbaum* case to her status as a creditor was not supported by the *Bloomingdale* case.

I accordingly hold that the claimants are not creditors under paragraph seventh of the separation agreement, but that the agreement merely created an enforcible obligation to make a testamentary provision for the benefit of the first wife of the testator and his children after her death. The testator performed that agreement. He undertook to do no more. The status of the claimants is, therefore, that of legatees or beneficiaries under the will. As such legatees or beneficiaries they take subject to the operation of the statutes relating to testamentary dispositions, including the right of the surviving widow to take her intestate share under section 18 of the Decedent Estate Law. Their rights are also subordinate to all true creditors of the estate. The widow of the testator is, therefore, entitled to a one-third share of the net estate. The respective interests of the claimants as legatees or beneficiaries must be satisfied out of the balance.

It appears that there are other issues raised by the objections filed to the account herein which require determination. Included within them is the claim of the executors of the estate of the first wife to a balance due and owing which became payable to her under the separation agreement prior to the death of the testator. As to this amount, when established, her estate is a true creditor of the estate. If the parties can agree upon the exact sum to which she is entitled, they may file a stipulation fixing the amount in order to avoid the necessity of taking testimony thereon. If they cannot agree between themselves as to the amount due, the surrogate will determine that issue upon the hearing of the remaining issues raised by the objections. A hearing upon such issues has been set for the 18th day of July, 1940, at ten-thirty A. M.

Proceed accordingly.