Samuel J. Silverman, S.
After hearing on objections to an executor’s accounting, the court decides the issues as follows:
1. The most serious question in the case relates to the objections of the divorced first wife of the decedent, Myra Ullman, based on her rights under the separation agreement between herself and decedent. Specifically there are involved the questions whether the objectant is entitled to her share entirely in cash or whether she must take a prorata share of the assets, including a portion of the decedent’s minority stock interest in a closely held corporation; whether she is entitled to a share of gifts made by decedent shortly before death; and whether she is entitled to anything by reason of decedent’s pension rights under his company’s pension plan.
The separation agreement between objectant and decedent provided in part as follows: “ seventh : The husband shall forthwith cause to be prepared and shall duly execute his valid and legal last will and testament, pursuant to the terms of which, upon his death, one-fourth of his net estate shall be devised and bequeathed to the wife. * * * The provisions of the foregoing paragraph may be specifically enforced.”
After executing this agreement, the parties were divorced and thereafter decedent remarried. His last will made some small preresiduary bequests ($2,500- in cash plus manuscripts and a ring) and thereafter provided:
“sixth: All the rest, residue and remainder of my estate, whether real, personal or mixed, of whatsoever kind and wheresoever situate, including any property over which I may have power of appointment or disposition at my death, I dispose of as follows:
“ I. One-fourth (1A) thereof, I give, devise and bequeath to my divorced wife, myra bresky ullman, if she shall survive me and shall not theretofore have remarried.
“ This bequest is made pursuant to, and in fulfillment of, an obligation imposed upon me by an Agreement of Separation, *498 dated November 1, 1950, and a Decree of Divorce, embodying the provisions thereof, dated December 23,1950.”
The objeetant, Myra Ullman’s, rights must come from the separation agreement or the will or both. There appears to be no dispute as to her rights under the will as such. It is her contention, however, that by reason of the separation agreement she is entitled to something more. The separation agreement says that the husband shall execute a will pursuant to the terms of which upon his death one fourth of “ his net estate ” shall be bequeathed to the wife. In determining what is meant by this language, I think we can get some guidance beyond the language of the agreement itself from two additional factors:
(i) The contract is not a promise to pay a sum of money; it is a contract to make a will with certain provisions in it. (Matter of Hoyt, 174 Misc. 512, 516 [Surrogate’s Ct., N. Y. County, 1940]; Matter of Mills, 34 Misc 2d 164,166 [Surrogate’s Ct., Nassau County, 1962].)
(ii) The widow’s right of election under section 18 of the former Decedent Estate Law furnishes a helpful analogy. That statute provided at the time of the separation agreement and at the time of decedent’s death and still provides that in certain circumstances the widow has a right to elect to take ‘ ‘ one-third of the net estate of a decedent * * * after the deduction of debts, funeral and administration expenses.” (Former Decedent Estate Law, § 18, subd. [a]; see EPTL 5-1.1, subd. [a], par. [1], subpar. [A].)
I think it is significant that the separation agreement uses the same phrase “net estate” as the statute governing the widow’s right of election. The parties were husband and wife engaged in regulating their property rights. The parties were giving up their rights in each other’s estates, including specifically the right to elect to take against the spouse’s will (separation agreement, par. Fourteenth).
It seems a reasonable inference that the provision that the husband should leave to the wife 25% of the net estate was the compromise the parties arrived at to compensate the wife for giving up her right to elect to take one third of the husband’s net estate under section 18 of the Decedent Estate Law and that the “net estate ” the parties were talking about was the same “net estate” the statute talks about. The husband at least was represented by a New York lawyer in connection with the agreement. The wife was represented by a Massachusetts lawyer and perhaps, also, a New York lawyer. The agreement provides that it shall be construed in accordance with the laws of the State of New York (par. Twentieth). Incidentally Massa *499 chusetts apparently has a statute similar to New York’s widow’s right of election statute. (Cf. Newman v. Bore, 275 N. Y. 371, 379 [1937], citing Leonard v. Leonard, 181 Mass. 458.)
I consider now the specific problems raised by objectant with respect to her rights under this paragraph of the agreement:
(a) Objectant Myra Ullman contends that because the husband left her not one fourth of his net estate but one fourth of his net estate after preresiduary gifts of $2,500 or so, she is entitled to treat the will as a breach of the agreement and is entitled to money damages. But the breach was only in failing to give her one fourth of the preresiduary gifts, i.e., $625 (plus possibly one fourth of the value of the books and manuscripts and diamond ring, if those be claimed). If she is allowed money damages as and for breach of the entire agreement she will be better off than if the decedent had performed his agreement precisely, i.e. had made a will giving her one fourth of his net estate in the exact language of the agreement. On the other hand, if she is given in addition to what the will provides, an amount equal to one fourth of the preresiduary gifts, she will be in exactly the same position that she would have been if decedent had performed his agreement literally. This then is what she is entitled to. And this is what the executor proposes that she have (subject to the matter of the books, manuscripts and the ring to which no reference has been made at the hearing and which may or may not be of nominal value). She is entitled to no more.
As the Appellate Division stated in Matter of Tanenbaum (258 App. Div. 285, 289 [2d Dept., 1939]): “ The engagement was not a contract to convey property. It was a promise to make a testamentary disposition. The difference has significance. (Matter of Kidd, 188 N. Y. 274, 278.) The breach of this obligation to make a testamentary provision would not constitute the wife a true creditor; it would merely give rise to a right in equity to enforce the obligation of the husband.”
(b) Objectant Myra Ullman contends that she should not be required to take a percentage of decedent’s minority stock in a closed corporation but that she should be entitled to the value of that stock in cash (at least to the extent that there is such cash) and that the other legatees should get stock rather than cash.
There has been some discussion in this case and in other cases of whether a former wife claiming under a separation agreement is a “ creditor ” or not and the answer has varied depending on the context and the issue. I do not believe the solution of the problem is advanced particularly by affixing the label *500 “creditor” or “legatee” to the objectant. As Surrogate Collins said in Matter of Erstein (205 Misc. 924, 930 [Surrogate’s Ct., N. Y. County, 1954]): “ Nor can the decision be made to depend upon whether the courts in other cases refer to the promisee as primarily a legatee or a creditor. For some purposes the promisee may be regarded as a claimant and for others as a legatee. It is often convenient to characterize a set of rights and concomitant duties by a label which clearly calls to mind all of such rights and duties. It would be misleading, however, to attempt to define the full set of rights and duties on the basis of the name used by a court to signify only some of them. It is the substance of the promisees’ rights which now concern us, not the name which most nearly signifies them.”
Whether she be called a creditor, a legatee, or a contract claimant, the objectant’s rights are to have the husband make a will leaving to her ‘ ‘ one-fourth of his net estate. ’ ’ If the husband does that and she gets one fourth of the net estate that is what she is entitled to.
In Matter of Hoyt (174 Misc. 512 [Surrogate’s Ct., N. Y. County, 1940]) a separation agreement provided that the husband would make a will creating a trust in the sum of at least $1,600,000, with income to the first wife, remainder to their children. By his will, the husband did this. Unfortunately, by the time he died the net assets of the estate were only $490,000. The second wife, the surviving Avidow, served a notice of election to take one third of the estate against the avíII. The first wife and children contended that as creditors they Avere entitled to have the $1,500,000 trust set up first and that the second wife’s rights were only to what was left after that. Judge Foley disagreed. He said (p. 516): “I accordingly hold that the claimants are not creditors under paragraph seventh of the separation agreement, but that the agreement merely created an enforcible obligation to make a testamentary provision for the benefit of the first wife of the testator and his children after her death. The testator performed that agreement. He undertook to do no more. The status of the claimants is, therefore, that of legatees or beneficiaries under the will. As such legatees or beneficiaries they take subject to the operation of the statutes relating to testamentary dispositions, including the right of the surviving Avidow to take her intestate share under section 18 of the Decedent Estate Law. Their rights are also subordinate to all true creditors of the estate. The widoAV of the testator is, therefore, entitled to a one-third share of the net estate. The respective interests of the claimants as legatees or beneficiaries *501 must be satisfied out of the balance.” (See, also, Matter of Tanenbaum, 258 App. Div. 285, 289 [2d Dept., 1939] supra.)
Under the agreement Mrs. Myra Ullman is to get one fourth of the net estate. I can see no difference in quality or nature between the one fourth of the net estate that she is entitled to and the three fourths of the net estate which decedent could dispose of freely. The only difference is that one is three times the other. But if decedent had provided that his estate should be divided into four equal parts, each in all respects identical, and had given one such part to claimant and three such parts to others, she could hardly complain.
It is true that in getting a portion of a minority interest in stock of a closed corporation, objectant gets some stock which is not liquid. Unfortunately that is inherent in the nature of decedent’s assets.
An analogy arises in connection with the exercise of the widow’s right of election. In Matter of Shupack (1 N Y 2d 482) a widow wished to exercise her right of election because the will created a trust with income to her, which although in a form which under the statute barred her right of election, in fact would not do her much good because the trust assets consisted largely of minority stock of a closed corporation controlled by persons who might be unfriendly to her. Nevertheless, the court said:
‘ ‘ The widow must accept her share of what her husband owned. If he died possessed of nothing, the widow, of course, would receive nothing. Similarly, if the husband died possessed of unproductive, unsaleable real estate, throwing off little, if any, income, the widow could not complain when she received one third of it outright or a legacy of $2,500 plus the one third in trust. Her financial position may turn out to be disadvantageous, and cause for regret, but, unfortunately for her, section 18 was not intended to assure her more than one third .of what her husband possessed when he. died.” (p. 487). * * *
‘ ‘ All we are now holding is that, where a testator has left to his spouse one third of all of his property, fairly and equitably divided, either outright or in trust in accordance with the provisions of the Decedent Estate Law, the fear or possibility of misconduct on the part of the trustee or of the corporate directors, managing the property, does not give rise to a right of election under section 18.” (p. 489).
It follows that if the objectant is given, as she is, one fourth of all assets, liquid and illiquid, she receives all that she is legally entitled to.
*502 (c) Objectant Myra Ullman contends that she is entitled to something on account of a gift of stock which decedent made two weeks before he died. There is no showing that the gift was in any sense illusory or causa mortis. It was held for tax purposes to be a gift in contemplation of death.
Again, I hold that objectant is not entitled to any share of this.
It was the testamentary estate that objectant was to be entitled to a share of, what decedent would dispose of under his will. These were not such assets.
Again, I think a relevant analogy is the law with respect to the widow’s right of election. At the time of this separation agreement and at the time of decedent’s death, a gift made by a decedent during his lifetime, even if made for the purpose of reducing the share to which his widow would be entitled, did not constitute a part of the net estate for purposes of determining the amount to which the widow is entitled on exercising her right of election. (Newman v. Dore, 275 N. Y. 371 [1937].) And apparently this was the law of Massachusetts at that time, also. (See page 379, citing Leonard v. Leonard, 181 Mass. 458.) Even the recent broadening of the widow’s right of election by subdivision (b) of EPTL 5-1.1 does not include such gifts among the “ testamentary substitutes ” of which the widow is entitled to a fraction.
I also note that this gift was of 800 shares of stock worth approximately $2,720 (at the $3.40 value, assigned by the executor in the account) out of decedent’s total holding of 46,300 shares of stock worth $157,420 (on the same basis).
(d) Decedent apparently had rather substantial pension rights which, under the pension agreement, were payable directly to his second wife. Objectant is not entitled to a share of these. They are not fairly a part of decedent’s “ net estate.” They neither form a part of his testamentary estate nor would they have been included in the measure of a widow’s right to elect to take against the will.
In Matter of Mills (34 Misc 2d 164 [Surrogate’s Ct., Nassau County, 1962]) decedent’s will gave 10% of “ my net estate ” to his stepdaughters. The court held that this net estate did not include his rights under his company’s profit sharing and retirement plan under which he had designated another daughter as beneficiary. Nor did it include certain real property as to which an agreement as to disposition on his death had been made. The court said (p. 166): “ The assets forming the contents of the Phileo Profit Sharing Plan, Philco Retirement Plan, and the realty which is the subject of the agreement of August 5, 1959, are nontestamentary in nature. Assuming the validity *503 of decedent’s designation of Ms daugMer, Emilie Ward Mills, as beneficiary to receive these assets, decedent has effectively disposed of these assets to his daughter, Emilie Ward Mills, outside the will in question. The usual definition of net estate as being the gross estate less debts, funeral and administration expenses, is of little assistance in the present case. The facts and circumstances here indicate that the decedent intended his estate to mean Ms testamentary estate, and not to include property or assets disposed of by him through other means.”
Again, even the broadened statute governing the widow’s right of election excludes such pension rights from the assets of which the widow is entitled to a fraction. (EPTL 5-1.1, subd. [b], par. [2].)
(e) After decedent’s death, the board of directors of the company of which he had been president resolved to pay to his widow an amount equal to the salary he had been receiving. They did this for two or three months, and thereafter they resolved to and did pay to his widow for one year, the sum of $750 per month. Objectant claims a share of this. These amounts were plainly never the property of decedent. They were a gift from the company to the widow. They were in no sense part of the estate.
(f) Accordingly, Myra Ullman objections 5 and 8 are dismissed, except insofar as may relate to 25% of decedent’s books and manuscripts and the ring previously referred to. (If these are of only nominal value the parties may so indicate on the settlement of the decree; otherwise they may make appropriate application on settlement of the decree in respect to them).
2. Objectant Myra Ullman has filed a supplemental objection. The separation agreement provided that decedent should pay to her for her support and maintenance “ the sum of $750 per month.” Decedent died on October 1, 1964. The executor sent to objectant Myra Ullman a check for $765 covering $750 alimony for September and $15 for October 1, 1964. Objectant contends that she is entitled to the full $750 for the month of October, 1964 and therefore demands the additional sum of $735. The agreement does not expressly provide what day of the month the payment shall be made but it does say that the payments “ shall begin with the date of this agreement” and the agreement is dated November 1, 1950. Accordingly, the fair inference is that payments were due on the first of the month and so the Appellate Division held on very similar facts. (Lalor v. Lalor, 274 App. Div. 623 [1st Dept., 1949].) (The vacating of this order by the same court a week later appears to have been a purely procedural or ministerial cor *504 rection and not a withdrawal of the opinion. 275 App. Div. 662.) Accordingly, this objection is sustained and objectant Myra Ullman is entitled to $735 with interest thereon at 6% per annum from October 1, 1964 as a creditor.
3. In view of the fact that objectant Myra Ullman will receive a distribution in kind of stock of the corporation, there is no occasion to value the stock at this time and accordingly it becomes unnecessary to pass on Myra Ullman Objection No. 1.
4. Myra Ullman Objections Nos. 2 and 4 are dismissed. Nothing was shown to indicate that decedent did not owe the debt of $12,248 to the Ullman Company or that the executors acted improperly in transferring some shares of stock of the Ullman Company to that company in payment of that debt.
5. Objections Nos. 3 and 7 are disposed of in connection with the claims for attorneys’ fees and in connection with the Lavers’ claim discussed below.
6. Myra Ullman Objection No. 6 is merely conclusory from the other objections.
7. Myra Ullman Objection No. 9 has been withdrawn. Her Objections Nos. 10 and 11 were dismissed on consent at the hearing.
CLAIM OF CHARLES W. LAVERS
Charles W. Lavers, a Massachusetts attorney and a judgment creditor of Myra Ullman under a Massachusetts decree, was served with citation and has filed objections. Before considering his objections, it becomes appropriate to consider whether this court has any jurisdiction to consider his claim.
Normally this court has no jurisdiction of a dispute between a legatee and a creditor of the legatee, nor does this court have jurisdiction to direct a legatee to make an assignment of any portion of his interest in the estate to a creditor. (Matter of Goelet, 28 A D 2d 149 [1st Dept., 1967].) If, however, a legatee has made an assignment of an interest in an estate, then this court can direct a fiduciary subject to the court’s jurisdiction to make payment in accordance with the assignment. (Ibid., p. 151.)
Claimant Lavers had been Myra Ullman’s attorney in Massachusetts in connection with various matters and he sued her apparently for compensation for his services, and for a direction that she assign a share of the Ullman estate to him. On March 25,1966 a consent decree was entered in the Massachusetts Superior Court determining that Myra Ullman was indebted to claimant Lavers in the sum of $4,500 and ‘1 That out of the next subsequent distribution from the Estate of Jerome M. Ullman *505 to the respondent Myra B. Ullman there shall be distributed to the petitioner an amount not exceeding $4500 which shall be sufficient to pay and satisfy any unpaid portion of the foregoing judgment in the amount of $4500.00.”
(Literally “ the next subsequent distribution ” after the judgment has already passed and Myra Ullman has been paid more than $4,500; but presumably claimant wishes to be paid out of some future distribution.) It appears to me that claimant is simply a creditor of Mrs. Ullman and therefore this court has no jurisdiction.
Normally a person who holds a foreign judgment must reduce that judgment to a New York judgment in a court having appropriate jurisdiction before he can enforce the judgment here. (Cf. Trionics Research Sales Corp. v. Nautec Corp. 21 N Y 2d 574 citing Cole v. Cunningham, 133 U. S. 107,112.) Claimant has not done this and I do not think he can do it in this court.
The Massachusetts decree is somewhat ambiguous in the sense that it is not entirely clear whether it is a direction to Myra Ullman to make a payment to Mr. Lavers or an adjudication that he is entitled to a share of Myra Ullman’s share of the estate. If the former then, as I have said, this court has no jurisdiction to require specific performance of the obligation. (Matter of Goelet, supra.)
In resolving the ambiguity, I am much influenced by the circumstances under which this consent judgment was obtained. It appears without dispute that the consent judgment was consented to by a firm of attorneys on behalf of Myra Ullman. She does not appear personally to have consented. She disputes that her Massachusetts lawyers had the authority to consent to the judgment. There is no evidence whatever that they had any express authority to consent to such a judgment. In fact, Myra Ullman was a patient in a mental hospital at the time that this judgment was entered, a fact that was known to Mr. Lavers and presumably to her attorneys at the time, though it does not appear whether this was disclosed to the court.
The consent judgment must therefore rest on implied authority in Myra Ullman’s attorneys. Nothing has been shown as to whether an attorney under the laws of Massachusetts has implied authority to consent to a judgment on behalf of his client. The authority of a foreign attorney is apparently subject to collateral attack in the New York courts. (Vilas v. Plattsburgh & Montreal R. R. Co., 123 N. Y. 440, 455 [1890].) Even as to a New York attorney in a New York court “it is the law in the State of New York that an attorney cannot settle a suit and conclude
*506 his client in relation to the subject in litigation without the client’s consent. [Citing cases.] The great weight of authority throughout the United States is to the same effect. ’ ’ (Countryman v. Breen, 241 App. Div. 392, 394 [1934], affd. 268 N. Y. 643 [1935].) A fortiori no attorney has any implied authority to make an assignment of a portion of his client’s property. There has been no showing that Massachusetts law is any different. I am reluctant to believe either that Massachusetts counsel intended to perform an act so clearly outside their authority, or that the Massachusetts court intended to approve such an unauthorized act. Accordingly, I hold that the Massachusetts judgment does not amount to an assignment of a portion of Myra Ullman’s interest in the estate. Absent such an assignment this court is without jurisdiction of Mr. Lavers ’ claim and it must be dismissed for lack of subject matter jurisdiction and with it all objections that he makes to the account.
This determination makes it unnecessary to determine whether the Massachusetts court had jurisdiction of the person of Myra Ullman and whether her attorneys had implied authority at least to settle the case and whether the Massachusetts judgment can be collaterally attacked in the New York courts.
The motions to dismiss the claim of Charles W. Lavers and the objections filed by Mr. Lavers for lack of jurisdiction of the subject matter are granted and Myra Ullman Objection No. 7 relating to the Ullman claim is sustained on the ground that in the present posture of the case, this court lacks subject matter jurisdiction to enforce the claim of Charles W. Lavers against Myra Ullman or her interest in this estate.
OBJECTIONS OF ALFRED R. BACHRACH
Objectant, a certified public accountant, objects to the disallowance of his firm’s claim for $2,000 for services rendered to the executor. The claim is allowed to the extent of $1,250. The services with respect to-the original bill for $2,000 as described on the face of the bill did not justify this bill. The effort to justify the bill included a good deal of services rendered after the bill. It is clear that much of the services were in the capacity of business adviser rather than accountant and (a) there is no evidence that the executor retained Bachrach as a business adviser and (b) in any event, if such a business adviser were retained, his services are included in the executor’s commissions and he must look to the executor rather than to the estate to pay him. However, there were tax services and apparently services with respect to corporate accounting records requested by the executor, and an allowance of $1,250 would appear to be justified by these services.
*507 COMPENSATION OF ATTORNEYS FOR EXECUTOR
The attorneys for the executor request allowance of a fee of $17,500 for their services, of which $10,000 has already been paid. The court allows $14,000 against which shall be credited the $10,000 paid.
While the attorneys have rendered considerable services, and rendered them well, it appears that much of the services included executorial work. The executor was a member of the firm of attorneys, and he apparently retired from active practice during the administration of the estate so that a good deal of his executorial work was done by his partners, and their time was included in the computations to justify the attorneys’ fees. The court pointed this out on the hearing. The next day the attorneys stated that they had discounted for this executorial work rendered by the attorneys; but I do not think the discount was sufficient. Furthermore, in connection with one abortive negotiation for disposition of the estate’s stock in the closed corporation, the attorneys were apparently to receive a finder’s fee. It was testified that it was always understood that the finder’s fee would only relate to stock held by the other stockholders and the estate; but the- documents offered in evidence are not so limited. On the other hand, as I have said, the work done by the attorneys was competently done. There was more than the usual amount of legal work in this case because of Mrs. Myra "Oilman’s needs, the nature of the assets of the estate, and the necessity for a contested accounting.
PLAN OF DISTRIBUTION
It appearing that the executor has been unable, despite his efforts and those of his partners, to dispose of the minority stock in the closed corporation, the plan of distribution proposed by the executor (which included distribution in kind) is approved, subject to modifications by reason of the foregoing rulings.