Cowman, *et al. vs.* Sarah Hall—Glenn, Adm'r of Hall *vs.* Sarah Hall.—*December,* 1831.

H, in 1789, and in consideration that his mother would pay him £100 over his part of his father's personal estate, and all the debts due from her deceased husband, and also procure H a conveyance in fee of certain lands, agreed with her, as a provision for the younger children of the family, to convey to her or her heirs, or to such of the younger children and their heirs, as she should from time to time appoint, certain other lands of which he was seised. A few days after this, H married. Upon a bill filed in 1826, by his widow for dower, it appeared, that the mother in 1789, went into the possession of the land which H had agreed to convey—that in 1807, H uniting with his mother, executed deeds for this land to the defendants, and that the deeds with the agreement were put on record at the same time— HELD, that it appeared that the mother had complied with her part of the agreement, and was entitled to the conveyances from H, clear of any claim for dower on the part of his widow.

A widow is not dowable in equity of lands which were held by her husband in the character of trustee.

Where a bill for dower alleged that the complainant's marriage with her deceased husband took place "on or about the year seventeen hundred and ——," and called upon the defendant to answer whether "she was not married as stated." And the answer after setting out an agreement of the 14th January, 1789, alledged that "the marriage took place some time after that agreement," it was HELD, that this allegation, both as respects the fact and time of marriage, was responsive to the bill, and must stand as conclusive of those facts, not being contradicted by any evidence.

APPEAL from the Court of Chancery.

On the 11th of August, 1826, the appellee filed her bill, against *Henrietta Hall*, since deceased, alleging, that on or about the year seventeen hundred and —— she intermarried with a certain *Richard Hall* of *Edward*, who at the time of said intermarriage was seised in fee, of certain lands in *Anne Arundel* county, described in exhibits A and B, filed with, and made parts of her bill. That she thus became entitled to dower in said lands, upon the death of her husband, who departed this life, on or about the —— day of January, 1823; she never having in any way relinquished her dower in the same. That the said *Henrietta Hall*, as devisee of one *Edward Hall*, (since dead) named in exhibits A and B, is, and for some time past, has been in possession of said lands, claiming them under the said *Edward* in fee; and refuses to assign the complainant her dower therein, and to pay her, her proprotion of the rents and profits thereof. The bill then prays that the defendant may answer the premises, as if particularly interrogated, and especially whether the complainant was not married to the said *Richard Hall* of *Edward* as stated, &c. That her dower may be assigned her by the court, and the defendant be decreed to pay her proportion of the rents and profits of the land.

The *Answer* of *Henrietta Hall*, admits the death of *Richard Hall* of *Edward*, and his marriage with the complainant; and says that on or about the 14th of January, 1789, the said *Richard Hall* of *Edward*, and a certain *Martha Hall*, entered into articles of agreement, (referred to, as exhibit A, in another cause then depending in the Court of Chancery) by which it was stipulated between the parties, that said *Martha* was to pay him, the said *Richard*, the sum of £100, over and above his part of his father's personal estate; to pay all debts due from said estate, and to procure him the said *Richard*, and his heirs, a conveyance in fee simple, for certain lands purchased of *Thomas H. Hall*, and to deliver him *Richard*, the immediate possession thereof,

&c. Then the said *Richard*, in consideration thereof, and as a provision for the younger children of the family, agreed to convey to the said *Martha* and her heirs, or to such of the younger children, brothers or sisters to the said *Richard*, as the said *Martha* should, from time to time direct and appoint, sundry lands in such agreement mentioned, &c. The answer further states, that the said *Martha* faithfully performed her part of the said agreement, and that in compliance therewith, and by the direction and appointment of the said *Martha*, the deeds in complainant's bill referred to, were executed by her, the said *Martha Hall*, and the said *Richard Hall* of *Edward*, to the said *Edward Hall*, the son of the said respondent, and younger brother of the said *Richard Hall* of *Edward.* The answer then alleges, that the complainant was married to her aforesaid husband, some time after the said agreement was executed.

*Exhibits* A and B were certified copies of deeds recorded in the office of the clerk of *Anne Arundel* county, both bearing date on the 13th day of July, 1807, from *Martha Hall* and *Richard Hall*, to *Edward Hall*, younger brother to said *Richard*, the first containing 250 acres of land, described by metes, and bounds, courses and distances; the second conveying a tract or parcel of land called *Chancey's Resolution*, containing 400 acres, and a parcel of land containing 25 acres, called *Wades' Increase.*

The *exhibit* filed in the case against *Glenn*, adm'r of *Hall* and *Julius Hall*, was a similar deed from the same parties, dated on the same day, conveying to *Thomas W. Hall* and *John Hall*, also younger brothers of *Richard Hall*, several other tracts of land called, *Maddox's Adventures, Arnold Grey, Happy Choice*, and other adjacent tracts. This latter bill was for dower in those lands, and the pleadings and proofs in both cases were the same.

Upon the death of *Henrietta Hall*, the proceedings were revived against her representatives, the present appellants.

Commissions issued to take testimony, under one of which the following agreement referred to in the answer of *Henrietta Hall*, was proved and returned.

" *Mem.* of agreement made this 14th day of January, 1789, between *Richard Hall,* son of *Edward,* of *Anne Arundel* county, in the state of *Maryland,* gentleman, of the one part, and *Martha Hall* of the same county and state, widow of the said *Edward,* of the other part, witnesseth, that the said *Richard Hall,* for and in consideration that the said *Martha* hath agreed to pay him one hundred pounds, current money, over and above his part of his father's personal estate ; and hath agreed to pay all the debts due from her deceased husband, and hath also agreed to procure him the said *Richard* and his heirs, a conveyance in fee simple, for all the lands purchased of *Thomas H. Hall,* and to deliver him immediate possession thereof, &c. The said *Richard Hall,* in consideration thereof and as a provision for the younger children of the family, hath agreed, and doth hereby bind, and oblige himself and his heirs, to convey to her, the said *Martha Hall,* or to her heirs or to such of the younger children, brothers or sisters to the said *Richard,* as she shall from time to time direct and appoint, and to their respective heirs, in fee simple, all the following lands, that is to say ; all the lands purchased of *Benjamin Welch,* also all the lands purchased of *William Hall,* also all the lands purchased of *William Ijams,* and all the lands heretofore deeded by *Henry Hall,* deceased, to the said *Edward,* except the *wood land* above reserved, together with all the improvements, &c. The same conveyance to be made either in separate deeds or otherwise, at the will, and according to the directions of the said *Martha,* from time to time, or at any time when by her required. And if no such direction in her life-time, then agreeably to such disposition as she shall make thereof, amongst the said children, by her last will and testament. It is to be observed, that this agreement in no wise obligates the above named *Richard,* to defend any of the lands by him to be deeded, against any person or persons, but those who claim immediately from, by, or under him. In testimony whereof, we

have hereunto set our hands and seals, the day and year first above written."

The above agreement was recorded among the land records of *Anne Arundel* county, on the same day with complainant's exhibits A and B. There was evidence taken under the commission, that all the lands in complainant's exhibit A, are mentioned in the preceding agreement—the agreement, however, does not embrace the tract called *Wade's Increase*, conveyed by exhibit B.

It appeared by accounts settled in the Orphans Court, that *Martha Hall* had overpaid the personal estate of her husband.

*Bland*, Chancellor, at September term, 1829, decreed, that the plaintiff *Sarah Hall*, is entitled to dower in all the lands and tenements in the proceedings mentioned; and directed a commission to issue for the purpose of making an assignment to her of her dower therein. And ordered an account to be taken by the auditor of the amount of the rents and profits, to which she may be entitled, from the period when her right to dower accrued. From this decree the defendants appealed to the Court of Appeals.

These causes were argued before BUCHANAN, Ch. J., EARLE, ARCHER, and DORSEY, J.

*Johnson*, for the appellants contended,

That the lands in which the complainant is allowed her dower, were, on the 14th of January, 1789, before her marriage with her deceased husband, contracted by him, with those under whom the appellants claim, to be sold for a valuable consideration, as appears by defendant's exhibit A. The complainant, he argued, had sought relief in a Court of Equity, and she must therefore be dealt with according to the principles which govern that court. One of the leading principles of the court is, to consider as actually done, that which ought to be done. The case of *Dimond's Adr'x vs. Billingslea, 2 Harr. and Gill,* 264, decides, that

an equitable right to dower, will be defeated by a previous contract to convey.

If the contract of 1789 was previous to the marriage of the complainant to her husband, then *Richard Hall* became a trustee of the lands therein mentioned, for the benefit of his mother *Martha.* A Court of Chancery would have compelled *Richard Hall* to fulfil his part of this contract; but he has fulfilled it by the execution of the deeds of 1807. That those deeds were designed as an execution of the contract of 1789, is evident from the circumstance of *Martha* being a grantor in them. If they had no connexion with that contract, why should she unite in them?

The fact that the contract was recorded together with the deeds, clearly shows that the parties supposed, and intended the latter, as an execution of the former. He insisted that the answer was evidence of the time of complainant's marriage, as being responsive to the bill. There is no proof of a marriage at all, except in the answer, which must be as competent to prove *the time*, as the fact. He admitted that a deed executed upon the eve of marriage without consideration would be void, but that is not the case here. The consideration was a valuable one.

*A. C. Magruder*, and *Murray*, for the appellee.

The fact of the marriage, and the seizin of *Richard Hall* is admitted, and it is not shown that the contract of 1789 was anterior to it. But if it was, they insisted that a Court of Chancery would not now enforce it specifically. The marriage certainly took place some time in 1789, and he lived until 1823. The deeds were not executed until 1807, so that the contract was dormant for 18 years. Such an agreement cannot be set up against the title of the widow, who is a purchaser for a valuable consideration. The deeds do not appear upon their face, to be in execution of the agreement of 1789; nor is there any evidence to show them to have been so. Suppose a bill had been filed on this contract, limitations would have been a bar to any

relief. A specific performance will not be decreed, upon a contract which has lain dormant for many years. *2 Eq. Cases*, 19. *Arden vs. Arden*, 1 *Johns. Ch. R.* 313. If the agreement was prior to the marriage, it was but a very short time before, and is fraudulent and void as against the wife. *Swaine vs. Perine*, 5 *Johns. Ch. R.* 482. All knowledge of the contract was kept from the wife, from the time of its execution until it was recorded with the deeds of 1807, and as it was a paper not required to be recorded, she was not bound to take notice of it. A secret contract cannot be set up to defeat dower.

BUCHANAN, Ch. J., delivered the opinion of the court.
Under the agreement of the 14th January, 1789, between *Richard Hall*, the deceased husband of the complainant, *Sarah Hall*, and his mother, *Martha Hall*, by which, for the consideration expressed, he contracted to convey to her in fee, or to such of her younger children, his brothers or sisters in fee, as she should direct, the lands therein mentioned, he became in equity a trustee for his mother, of all the lands embraced by that agreement. And the circumstance of that agreement, and the three deeds of the 13th July, 1807, from him and his mother *Martha*, for the same lands, two of them to *Edward Hall*, and the other to *Thomas W. Hall*, and *John Hall* his brothers, and the children of *Martha*, all standing recorded on the same day, and immediately following each other in the same book, together with the deeds being to three of the younger children, for whose benefit the agreement was entered into, and their mother having joined in the deeds, to whom, or to whose appointment the lands were contracted to be conveyed, shows satisfactorily, that *Martha Hall* had complied with the terms of the agreement on her part, and entitled herself to a compliance on the part of *Richard Hall*, and that the deeds were made in pursuance of that contract. For what other purpose could the agreement have been recorded with the deeds, (not being an instrument required by law

to be recorded,) than to show the inducement to the deeds, and that it had been complied with? And the additional fact appearing in evidence, that the lands covered by the agreement of the 14th January, 1789, were from the time of the execution of that instrument in the possession of *Martha Hall,* and never from that day in the possession of *Richard Hall,* is worthy of notice, and assists in leading to the conclusion, that she had performed all that was required of her to be performed, and had thereby entitled herself to a conveyance, in pursuance of the agreement, whenever she might choose to require it. Or why was she permitted to remain in the undisturbed possession and enjoyment of the premises? which is not accounted for in any other way, and as far as appears from this record, can only be accounted for on the ground that she was entitled to the beneficial interest. The lands were by the contract, to be conveyed to herself, or to such of her younger children, sons or daughters, as she should from time to time direct; and her uniting in the deeds to her three younger sons was a good appointment, and equivalent to a direction to *Richard Hall* to convey to them, at a time selected by herself, and which by the agreement she had a right to select, and when she thought proper to give them the property, and to cause the conveyances to be made. And it may be, that the deeds were not executed sooner, because she did not deem it proper or expedient to have it sooner done.

A widow is not dowable in equity of lands, which were held by her husband in the character of a trustee; and as the complainant seeks to be endowed of lands, embraced by the agreement between her husband and his mother *Martha Hall,* of the 14th January, 1789, of which he, on that day became a trustee for his mother, her right to recover must depend on the time of their marriage; and be determined according to the fact of the marriage having taken place, before, or subsequent to the execution of that instrument, as shown in the record.

In her bill, she alleges tha⁎ it took place " on or about the year seventeen hundred and" *blank,* and calls upon the defendant to answer, whether, " she was not married as stated." Not confining the interrogatory to the fact of marriage alone, but requiring a response, as well in relation to the time, as to the fact of marriage. And the answer setting out the agreement of the 14th January, 1789, which is stated to have been faithfully performed, denies the complainant's title to dower, and alleges that the marriage took place some time after that agreement was executed, that is, sometime after the 14th January, 1789, which allegation, both as respects the fact, and time of the marriage, is responsive to the bill, and is not contradicted by a single witness in the cause. On the contrary, the evidence of the only two witnesses who gave testimony upon that subject, so far from contradicting, is perfectly consistent with the answer, and goes to support it. They swear that they were married themselves on the 18th of December, 1788, and that the complainant, and her deceased husband, *Richard Hall,* were married about one month afterwards, reaching a few days beyond the 14th January, 1789, the date of the agreement, when *Richard Hall* stood seized of the lands, in which she claims to be entitled to dower, as trustee for his mother. But the answer alleging the marriage to have been after the date of the agreement, does not require the aid of that testimony to support it; but being responsive to the bill, and not contradicted, or shaken by any other evidence, must stand, as conclusive of the fact it asserts, that is, that the marriage was after the execution of the agreement of the 14th January, 1789. We are consequently constrained to say, that the complainant is not entitled to dower, in any of the lands embraced by that instrument, and of which her deceased husband, was at the time of their marriage, and afterwards seized only as trustee. But the land described in the deed from *Martha Hall* and *Richard Hall,* to *Edward Hall,* marked exhibit B, as "part of a tract of land called *Wade's*

*Increase,*" containing about twenty-five acres, not being embraced in the agreement of the 14th January, 1789, and of which *Richard Hall* was beneficially seized, during his coverture with the complainant, and not as trustee, she is entitled to dower in that land.

The decree of the chancellor therefore, must be reversed with costs, so far as it relates to the lands embraced by the agreement of the 14th January, 1789, between *Richard Hall* and *Martha Hall;* and the complainant will be decreed to have her dower, in the other parcel of land described in the exhibit B, as " part of a tract of land called *Wade's Increase.*"

With respect to the case of *Glenn*, adm'r of *Thomas W. Hall*, and *Julius Hall vs. Sarah Hall*, which has been submitted to us on the same pleadings and evidence, the whole of the land in which dower is claimed, being embraced by the agreement between *Richard Hall* and *Martha Hall*, of the 14th January, 1789, and consequently, held by *Richard Hall*, at the time of his marriage to the defendant in the appeal, and afterwards, as a trustee only for his mother, the defendant is not entitled to dower in any part of it, and the decree of the chancellor must be reversed, and the bill dismissed with costs.

DECREE. It was thereupon adjudged, &c. by the Court of Appeals, that the decree of the chancellor in the case of *Joseph E. Cowman, et al. vs. Sarah Hall*, be reversed, with costs to the appellants in this court, and the Court of Chancery. But it appearing to this court, that the appellee is entitled to dower in the land described in exhibit B, as part of a tract of land called *Wade's Increase*, it was therefore, further adjudged, ordered, and decreed, that the record in this case, be remanded to the Chancery Court, and that the said court pass such order, and decree therein, as may be necessary to assign dower to the appellee in the said land, with such rents and profits accruing out of said land as she may be entitled to.

DECREE REVERSED.