556 A.2d 252

Lisa Mae SHIMP

v.

Mary Virginia HUFF and Wallace R. Huff, Personal Representatives of the Estate of Lester Shimp et al.

No. 71, Sept. Term, 1988.

Court of Appeals of Maryland.

April 11, 1989.

Susan Rhodes Nicholson (Ralph H. France, II, on brief), Hagerstown, for appellant.

Omer T. Kaylor, Jr. (Kaylor & Wantz, on brief), Hagerstown, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

In his treatise, *The Law of Wills*, § 34 at 69 (3rd ed. 1947), George W. Thompson warns that "[a]s a general rule, joint wills are not regarded with much favor by the courts, and are ... apt to invite litigation." The joint will of Lester and Clara Shimp has fulfilled Thompson's prediction by causing this Court for a second time to resolve conflicts arising from that will. In *Shimp v. Shimp*, 287 Md. 372, 412 A.2d 1228 (1980) (*Shimp I*), we addressed the issue of whether Lester and Clara's joint will could operate as a binding contract and thereby limit the survivor's right to dispose of property by a testamentary plan which differed from that contained in the joint will. In the present case, the issue is whether Lester Shimp's second wife, upon his death, is entitled to receive an elective share and a family allowance under Maryland Code (1974, 1988 Cum.Supp.) § 3–203 and § 3–201 of the Estates and Trusts Article when Lester had previously contracted, by virtue of a joint will with his first wife, to will his entire estate to others.

Sections 3–203 and 3–201 of the Estates and Trusts Article are codified under Subtitle 2 of Title 3, which is entitled: "Family Allowance and Statutory Share of Surviving Spouse." As to the latter, § 3–203(a) provides that

"[i]nstead of property left to him by will, the surviving spouse may elect to take a one-third share of the net estate if there is also a surviving issue, or a one-half share of the net estate if there is no surviving issue." As to the family allowance, § 3–201 provides in part, that a surviving spouse is entitled to "an allowance of $2000 for his personal use." [1]

## I.

Lester Shimp married his first wife, Clara, in 1941. At the time of their marriage, neither Lester nor Clara possessed any property of consequence. Subsequently, in 1954, they acquired a farm which they sold in 1973; thereafter they bought a home. Lester and Clara took title to both the farm and the home as tenants by the entireties.

On May 8, 1974, in Washington County, the couple executed an instrument titled "Last Will and Testament of Clara V. Shimp and Lester Shimp." It stated in relevant part:

WE, CLARA V. SHIMP AND LESTER SHIMP, of Washington County, Maryland, being of sound and disposing mind, memory and understanding, and capable of making a valid deed and contract, do make, publish and declare this to be our Last Will and Testament, hereby revoking all other Wills and Codicils by each of us made.

After the payment of all just debts and funeral expenses, we dispose of our estate and property as follows:

ITEM I. A. MUTUAL BEQUEST—We mutually give to whichever of us shall be the survivor the entire estate of which we may respectfully own at our death.

B. SURVIVOR'S BEQUEST—The survivor of us gives the entire estate of his or her property which he or she may own at death as follows:

---

**1.** Unless otherwise indicated, all section references are to the Estates and Trusts Article of the Code.

1) Unto James Shimp, if he is living at the death of the survivor of us, the sum of One Thousand ($1,000.00) Dollars.

2) Unto Emma Plotner, if living at the death of the survivor of us, the sum of One Thousand ($1,000.00) Dollars.

3) Unto Mary Virginia Huff and Betty Jane Moats all household goods and machinery to do with as they desire. This bequest is made unto them due to the care that they have given us.

4) All of the rest and residue of the estate of the survivor is hereby devised unto Mary Virginia Huff, Betty Jane Moats, Paul R. Mijanovich and Ruth C. Thomas to be divided equally among them. In the event of the death of any of said persons, their children shall inherit the share to which the parent would have been entitled, if living.

.    .    .    .    .

ITEM III. We, the Testators, do hereby declare that it is our purpose to dispose of our property in accordance with a common plan. The reciprocal and other gifts made herein are in fulfillment of this purpose and in consideration of each of us waiving the right, during our joint lives, to alter, amend or revoke this Will in whole or in part, by Codicil or otherwise, without notice to the other, or under any circumstances after the death of the first of us to die. Unless mutually agreed upon, this Last Will and Testament is an irrevocable act and may not be changed.

Clara died in 1975 in Washington County. At the time of her death she did not own property solely in her name and possessed no probate estate. Lester did not offer the will for probate following his wife's death. He did, however, file a petition in the Circuit Court for Washington County seeking declaratory relief and requesting the right to execute a new last will and testament. The court found that the will was revocable, but that the contract under which the will was executed might be specifically enforced in equity or damages recovered upon it at law. Lester appeal-

ed to the Court of Special Appeals, *see Shimp v. Shimp*, 43 Md.App. 67, 402 A.2d 1324 (1979), and ultimately, by writ of certiorari, the case came before us.

In *Shimp I*, we found that the Shimps had executed their joint will pursuant to and in accordance with a valid, binding contract. 287 Md. at 387, 412 A.2d 1228. We held that Lester was "entitled to a declaratory decree stating that he may revoke his will but that an enforceable contract was entered into between him and his wife.... [and that] [a]t his death it may be specifically enforced in equity or damages may be recovered upon it at law." *Id.* at 388, 412 A.2d 1228. Thereafter, Lester did not execute another will or otherwise disturb the testamentary plan set forth in the joint will.

On April 4, 1985, in Washington County, Lester married Lisa Mae; they remained married until his death on January 11, 1986. Lester was not survived by any children.

Following Lester's death, Clara and Lester's joint will was admitted to probate in Washington County. Mary Virginia Huff and Wallace R. Huff were appointed Personal Representatives of the Estate on January 30, 1986. Lisa Mae and Lester had not entered into any marital agreement waiving Lisa Mae's marital rights, and she sought payment of a family allowance and filed an election for her statutory share of Lester's estate. On June 4, 1986, the Personal Representatives declined to pay Lisa Mae either her family allowance or her elective share. On July 10, 1986, Lisa Mae filed suit for a declaratory judgment in the Circuit Court for Washington County, requesting that the court pass an order that she was entitled to both a family allowance and an elective share of Lester's estate.

The court (Corderman, J.) framed the issue before it as "whether, under Estates and Trusts Article 3–203, the plaintiff has a right to an elective share of an estate previously devised under a valid contract." While noting the absence of Maryland cases addressing this specific issue, the court, nevertheless, found precedent in decisions

of this Court regarding the relationship between dower interests and contractual obligations. It observed that under rules pertaining to dower rights, a widow, absent fraud, has no dower rights or interest in lands disposed of prior to marriage. The court placed emphasis upon the early case of *Cowman v. Hall,* 3 G. & J. 398 (Md.1831). It said that this case established the principle that a widow is not entitled to dower in land for which her husband was only a trustee by virtue of his having made a contract with his mother prior to the marriage to dispose of the land by will. After drawing an analogy between dower rights and a claim for an elective share, the court applied the principles concerning dower to the present case. It found that because Lester, before his marriage to Lisa Mae, had entered into a binding contract to devise all of his estate, he was not seized of an estate of inheritance at the time of his second marriage, but rather was merely a trustee of that estate. Because a widow is entitled to no part of her husband's estate except that of which he dies seized or possessed, the court concluded that since Lester was merely a trustee for the property, there was no estate from which Lisa Mae could take an elective share. Similarly, the court found that Lisa Mae could not claim a family allowance because there were no estate assets from which the allowance could be paid. Lisa Mae appealed to the Court of Special Appeals; we granted certiorari prior to a decision by that court to resolve the important issues raised in the case.

## II.

In *Shimp I,* we focused upon the issue of whether Lester and Clara entered into a binding contract when they executed a joint will and the effect of that contract on Lester's ability to alter the testamentary plan contained in that joint will. We reviewed the law pertaining to contracts to make a will. We noted that both courts and commentators have tended to blend the will and contract components of an instrument, as a result of which they have found that wills—which are by their nature ambulatory—are in some

instances irrevocable, and that contracts, which by their nature trigger liability upon breach, are rescindable in some cases. 287 Md. at 377–78, 412 A.2d 1228. We indicated that *Moats v. Schoch & Berry*, 24 Md.App. 453, 332 A.2d 43 (1975) set forth the correct principles of law regarding the contractual nature of a joint will, namely, that a joint will may be revoked in the manner provided by statute; that a subsequent validly executed will shall be admitted to probate; but that " 'the contract upon which the prior will was executed, upon proof of its validity, may be specifically enforced in equity, or damages recovered upon it at law.' " 287 Md. at 381, 412 A.2d 1228, *quoting*, 24 Md.App. at 465, 332 A.2d 43. Thus, we determined that the central issue in *Shimp I* was not the revocability of the will, but whether Lester entered into a binding contract with his wife to devise property according to a stated plan. 287 Md. at 381, 412 A.2d 1228.

Citing Bertel Sparks' treatise, *Contracts to Make Wills* (1956), we noted that while the mere presence of either joint or mutual wills does not raise any presumption that they were executed in pursuance of a contract, a contract to devise may be established where there is clear and convincing proof. *Id.* at 381, 383, 412 A.2d 1228. In examining Lester and Clara's joint will, we found that the terms of the contract were clear and unambiguous. *Id.* at 383, 412 A.2d 1228. We indicated that consideration sufficient to prove the existence of a contract might be established by each testator having agreed "by the joint will or other contract to make a particular testamentary disposition in return for a like promise from the other testator." *Id.* at 386, 412 A.2d 1228. We determined that adequate consideration existed in *Shimp I* because the parties had stated in their will that they made both the reciprocal and third party bequests in exchange for each other's agreement to waive the right to change the will. *Id.* at 387, 412 A.2d 1228. Thus, we found that the evidence in the case established that a valid contract existed and that this contract was the basis for the making of the joint will. *Id.* at 387, 412 A.2d

1228. We concluded that Lester was "entitled to a declaratory decree stating that he may revoke his will but that an enforceable contract was entered into between him and his wife.... [and that] [a]t his death it may be specifically enforced in equity or damages may be recovered upon it at law." *Id.* at 388, 412 A.2d 1228.

While *Shimp I* focused primarily upon the effect of the joint will and contract upon Lester's ability to alter the testamentary plan contained therein, we considered the contract's possible effect upon the rights of any future wife of Lester's; we said:

It may be if Shimp remarries that his then wife may be placed in a disadvantageous position by the contract with the first wife. If by reason of a prior marriage he was under a burdensome requirement to pay a substantial sum to a prior wife by way of alimony and for support of minor children, the second wife might regard herself as in a disadvantageous position. However, as Dean Evans so forcefully stated, "A woman who marries a spouse after the latter has so bound himself by contract undertakes the marriage constrained by all obligations then existing. No legislative purpose has been discovered by the courts which should avoid in this way existing rights and duties." 287 Md. at 388, 412 A.2d 1228, *quoting,* 33 Ky.L.J. at 86.

The Personal Representatives contend that this statement in *Shimp I* is determinative of the issue raised in the present case. They argue that we were "not speaking primarily about alimony" but rather indicated that Lester's "prior contractual obligations could preclude recovery by a subsequent spouse to that portion of the estate covered in the contract." Our statement, however, makes no reference to a surviving spouse's claim for an elective share in an estate which by contract must be devised to others, and thus cannot reasonably be interpreted to bar a subsequent spouse's claim.

The Personal Representatives also argue that *Cowman v. Hall, supra,* is dispositive of the issues raised in this case.

As earlier observed, the circuit court found that *Cowman* established that a widow is not entitled to dower in land to which her husband held title only as a trustee at the time of the marriage when he had previously made an agreement to dispose of the property by will. We think the circuit court misread *Cowman*.[2] In that case, the contract which the husband executed was not one to make a will devising the property but was a contract to convey the property by deed. Specifically, Richard Hall, entered into a contract with his mother, Martha Hall, on January 14, 1789, by which Martha agreed to convey to Richard certain lands previously owned by her husband, Edward Hall, Sr. In consideration for this conveyance, Richard agreed " 'to convey to her, the said Martha Hall, or to her heirs or to such of the younger children, brothers or sisters to the said Richard, as she shall from time to time direct and appoint, . . . . [t]he same conveyance to be made either in separate deeds or otherwise . . . according to the directions of the said Martha, . . . . [a]nd if no such direction in her life-time, then agreeably to such disposition as she shall make thereof, amongst the said children, by her last will and testament.' " 3 G. & J. at 401. By virtue of this contract, Richard received a fee simple interest in the property, but his interest was subject to a power of appointment exercisable by Martha by deed during her life or by will at her death in favor of Richard's brothers and sisters.

Subsequent to the execution of this contract, Richard married Sarah. On July 13, 1807, Martha executed a deed, exercising her power of appointment in favor of Richard's younger brothers, Edward Hall, Jr., Thomas Hall, and John Hall, and Richard Hall executed deeds conveying the property in accordance with his mother's directions. Richard died in January 1823, and on August 11, 1826, Sarah, his

---

2. This misreading may be the result of the circuit court having relied on Annotation, *Dower or Curtesy in Property Subject at Time of Marriage to Contract for Disposition by Sale or Will*, 8 A.L.R.3d 569 (1966), which mistakenly characterizes the *Cowman* case as one involving a contract to make a will. *See* 8 A.L.R.3d at 579.

widow, claimed dower rights in the land previously owned by her husband.

The Court found that by executing the January 14, 1789 contract and by performing her obligations under this agreement, Martha became "entitled herself to a conveyance, in pursuance of the agreement, whenever she might choose to require it." These facts, coupled with the fact that Martha remained in actual possession of the property following the execution of the contract, indicated to the Court that Martha was entitled to the beneficial interest in the property, while Richard "became in equity a trustee for his mother, of all the lands embraced by th[e] agreement." *Id.* at 404–05.

Having determined the interests of Richard and Martha under the agreement, the Court next addressed Sarah's claim for dower in the property. It noted that ordinarily "[a] widow is not dowable in equity of lands, which were held by her husband in the character of a trustee." *Id.* at 405. The Court found that because Richard had entered into the contract with his mother prior to his marriage, he held the lands in which Sarah claimed dower merely as a trustee. Consequently, the Court held that, as Richard's widow, Sarah was "not entitled to dower in any of the lands embraced ... [by the agreement], and of which her husband was at the time of their marriage and afterwards seized only as a trustee." *Id.* at 406.

*Cowman* thus involved a contract to convey property by deed and not a contract to devise property by will. It, therefore, differs substantially from the present case. Under a contract to make a will devising property, the right to convey property by will is not absolute. As this Court has often recognized "the right of a person to transfer property upon his death to others, or the right of a person to receive property by will or inheritance, is not a natural right but a privilege granted by the State." *Safe Dep. & Tr. Co. v. Bouse*, 181 Md. 351, 355, 29 A.2d 906 (1943). Thus, the transferee's rights under a contract to make a will may be limited by statutes, which require the decedent to pay, *inter*

*alia,* taxes, administration fees, and funeral expenses, before satisfying any bequests made in the will. The likelihood that a contract beneficiary's interest will be reduced is even greater where there is a contract to devise an entire estate because before such a contract can be fulfilled the estate must be reduced by the payment of the obligations set forth by statute. While in *Cowman* the contract beneficiaries enjoyed the full range of rights afforded transferees under a contract for an inter vivos conveyance, rights accruing under the contract to make a will may be limited by statutes affecting a decedent's ability to convey property under the will.

## III.

While we have not previously addressed the issue of a surviving spouse's right to take an elective share in conflict with claims under a contract to convey by will, courts in other jurisdictions have examined the issue under varying factual situations. *See, e.g., Owens v. McNally,* 113 Cal. 444, 45 P. 710 (1896); *In Re Estate of Donner,* 364 So.2d 742 (Fla.Dist.Ct.App.1978); *In Re Estate of Donner,* 364 So.2d 753 (Fla.Dist.Ct.App.1978), *cert. denied,* 373 So.2d 457 (Fla.), *appeal dismissed sub nom.* 444 U.S. 958, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979); *Bedal v. Johnson,* 37 Idaho 359, 218 P. 641 (1923); *Dillon v. Gray,* 87 Kan. 129, 123 P. 878 (1912); *Wides v. Wides' Ex'r,* 299 Ky. 103, 184 S.W.2d 579 (1944); *Rubenstein v. Mueller,* 19 N.Y.2d 228, 225 N.E.2d 540, 278 N.Y.S.2d 845 (1967); *In Re Estate of Dunham,* 36 A.D.2d 467, 320 N.Y.S.2d 951 (1971); *In Re Tanenbaum's Estate,* 258 A.D. 285, 16 N.Y.S.2d 507 (1939), *reh'g and appeal denied,* 258 A.D. 1054, 17 N.Y.S.2d 1021 (1940); *Gall v. Gall,* 64 Hun. 600, 19 N.Y.S. 332 (N.Y.Sup.Ct.1892); *In Re Erstein's Estate,* 205 Misc. 924, 129 N.Y.S.2d 316 (N.Y.Surr.Ct.1954); *In Re Lewis' Will,* 4 Misc.2d 937, 123 N.Y.S.2d 859 (N.Y.Surr.Ct.1953); *In Re Hoyt's Estate,* 174 Misc. 512, 21 N.Y.S.2d 107 (N.Y.Surr.Ct.1940); *Patecky v. Friend,* 220 Or. 612, 350 P.2d 170 (1960); *In Re Estate of Beeruk,* 429 Pa. 415, 241 A.2d 755 (1968); *Budde v. Pierce,*

135 Vt. 152, 375 A.2d 984 (1977); *Fields v. Fields,* 137 Wash. 592, 243 P. 369 (1926); *In Re Arland's Estate,* 131 Wash. 297, 230 P. 157 (1924); *In Re McLean's Estate,* 219 Wis. 222, 262 N.W. 707 (1935); *see also* B. Sparks, *Contracts to Make Wills* 167–78 (1956); Lilly, *Will Contracts: Contract Rights in Conflict With Spousal Rights,* 20 Tulsa L.J. 197 (1984).

In a number of these cases one spouse, after entering into a divorce or separation agreement which requires that spouse to leave part or all of the estate to the first spouse, remarries and then dies. *See, e.g., Donner, supra; Wides, supra; Tanenbaum, supra; Dunham, supra; Erstein, supra; Hoyt, supra; Lewis, supra; Budde, supra.* In other cases, the decedent has contracted to make a will leaving property to children or other relatives. *See, e.g., Rubenstein, supra; Patecky, supra; Arland, supra.* Still other cases have arisen where the decedent had remarried after entering into an agreement to will property in exchange for services, *see, e.g., Owens, supra,* or for forbearance from legal action, *see, e.g., McLean, supra,* or to facilitate an adoption, *see, e.g., Bedal, supra; Fields, supra.* In some cases, the decedent has executed a will conforming to the contract, while in others he has breached the contract by executing a nonconforming will or by dying intestate.[3]

---

**3.** A conflict between contract beneficiaries and a surviving spouse claiming an elective share also may arise where the decedent executed a will conforming to the contract, but the will was subsequently revoked by operation of law when the decedent married. *See, e.g., In Re Estate of Stewart,* 69 Cal.2d 296, 70 Cal.Rptr. 545, 444 P.2d 337 (1968) (*en banc*); *Simpson v. Dodge,* 220 Ga. 705, 141 S.E.2d 532 (1965); *Wides, supra.* While in the present case we do not face the issue of Lester's will being revoked by operation of law, courts have suggested that such a revocation will have little practical effect because regardless of whether the will is effective or revoked, the court must still deal with the contract's effect upon the rights of the surviving spouse. *See Wides, supra,* 184 S.W.2d at 582 (noting that if the decedent "had made a will in accordance with that contract ... ordinarily it should be held to have been revoked by his subsequent marriage to the appellant, [and] we would be at the same starting

## A.

The majority of these cases arise from the decedent having breached a contract to devise property by executing a nonconforming will or by dying intestate. In these cases, the claimants under the contract generally proceed on a theory of specific performance.[4] While the rights of beneficiaries of a contract vest after the contract is made, nevertheless, where suit is brought for specific performance of the contract, "the after-acquired rights of third parties are equitable considerations to be regarded in adjudicating the questions." *Owens, supra,* 45 P. at 713. In determining whether to award specific performance to contract beneficiaries, courts have considered several different factors, including whether the surviving spouse had notice of the contract prior to the marriage, *see, e.g., Patecky, supra,* 350 P.2d at 175, the length of the marriage and the natural affection shared between the decedent and the surviving spouse, *see, e.g., Arland, supra,* 230 P.2d at 158, whether the surviving spouse would be deprived of the entire estate by enforcement of the contract, *see, e.g., Wides, supra,* 184 S.W.2d at 584, and the public policy concerning the marriage relationship and the rights of surviving spouses, *see, e.g., Wides, supra,* 184 S.W.2d at 584; *Budde, supra,* 375 A.2d at 986–87. In a great many cases consideration of these factors has led the court to determine that the superior equities were with the surviving spouse, *see, e.g., Owens, supra,* 45 P. at 713; *Bedal, supra,* 218 P. at 649; *Wides, supra,* 184 S.W.2d at 584; *Patecky, supra,* 350 P.2d at 177; *Fields, supra,* 243 P. at 371–72; *Arland's Estate, supra,* 230 P. at 159, while in other cases it has not, *see, e.g., Dillon, supra,* 123 P. at 880.

---

point, namely, the question of whether the contract is enforceable to the exclusion of the widow's statutory share").

4. It should be noted that the court cannot grant the claimants actual specific performance because the promisor is dead, and thus cannot be compelled to perform. Instead, the court treats those individuals who hold the property as trustee and compels them to convey it to the claimants in satisfaction of the contract. *See* Lilly, *supra,* at 222.

## B.

In those cases where the decedent has executed a will conforming to the contract, the claimants cannot seek specific performance, and courts, therefore, do not use equitable powers in resolving these cases.[5] Instead, courts have analyzed the conflicting claims by characterizing the competing claimants as either creditors or legatees and evaluating their claims under the applicable priority rules. In a number of cases involving divorce settlements, the courts have found that where the decedent executes a will, which conforms to the terms of a contract, the beneficiaries take as legatees under the will and not as contract creditors. *See, e.g., Donner, supra,* 364 So.2d at 755; *Dunham, supra,* 320 N.Y.S.2d at 954; *Tanenbaum, supra,* 16 N.Y.S. 2d at 510; *Lewis, supra,* 123 N.Y.S.2d at 862–63; *Hoyt, supra,* 21 N.Y.S.2d at 111. Consequently, because the applicable statutes give a higher priority to a surviving spouse's elective share than to testamentary bequests, the courts upheld the surviving spouse's claim over the claims of the contract beneficiaries. As the court explained in *In Re Hoyt's Estate*

> ... [we] hold that the claimants are not creditors under paragraph seventh of the separation agreement, but that the agreement merely created an enforceable obligation to make a testamentary provision for the benefit of the first wife of the testator and his children after her death. The testator performed that agreement. He undertook to do no more. The status of the claimants is therefore that of legatees or beneficiaries under the will. As such legatees or beneficiaries they take subject to the operation of the statutes relating to testamentary dispositions,

---

**5.** As noted in Lilly's article on will contracts, where the will conforms to the contract, the contract beneficiaries do not make a claim for specific performance in equity but rather raise any claims in probate proceedings. Thus, as the author notes, "[i]n case of a *conforming* will, equitable discretion does not come into play, and beneficiaries' full recovery will depend solely upon the priorities accorded to spousal right by the protective statutes." Lilly, *supra,* at 226.

including the right of the surviving widow to take her intestate share under Section 18 of the Decedent Estate Law. Their rights are also subordinate to all true creditors of the estate. The widow of the testator is therefore entitled to a one-third share of the net estate. The respective interests of the claimants as legatees or beneficiaries must be satisfied out of the balance. 21 N.Y.S.2d at 111.

At least one court, however, has suggested that analyzing the competing claims under the applicable priority statutes should be limited to cases involving divorce settlement agreements. In *Rubenstein, supra,* which involved an ordinary contract to devise property [6] rather than a separation agreement, the court distinguished those cases involving marital separation agreements, under which husbands covenanted to make a will, noting that different equitable considerations control in the two situations. The court explained:

Separation agreements are usually attended by a present division of any jointly held property, and any provision for a future legacy is usually but an incident to the over-all settlement to be made with respect to the husband's individual property and his obligation of support. In the case of the joint will, however, this instrument typically represents the sole attempt by the signatories to effect a distribution of their collective property in a fashion agreeable to both. Most importantly, in those separation agreements there was no irrevocable obligation concerning the collective property. The husband did not ... become sole owner of jointly owned property by virtue of surviving the former wife. As the divorced

---

**6.** In *Rubenstein, supra,* the decedent and his first wife executed a joint will, whereby the survivor agreed to leave the entire estate to relatives. Like this Court in *Shimp I,* the court found that a contract existed between the decedent and his first wife based upon the joint will, rather than from any independent instrument. *See Rubenstein v. Mueller,* 47 Misc.2d 830, 263 N.Y.S.2d 349, 352–53 (N.Y.Sup.Ct.1965), *aff'd* 26 A.D.2d 619, 272 N.Y.S.2d 725 (N.Y.App.Div.), *aff'd* 19 N.Y.2d, 228, 225 N.E.2d 540, 278 N.Y.S.2d 845 (1967).

husband's property after the agreement remains his own individual property, to which he holds beneficial as well as legal title, his widow's right of election may be asserted against such assets. 225 N.E.2d at 544, 278 N.Y.S.2d at 850.

Thus, the court suggests that in these cases whether the surviving spouse's claim is given priority does not depend upon whether the contract beneficiaries are characterized as contract creditors or legatees. Instead the court reasoned that this priority is based upon the decedent having held both the legal and beneficial title to the property completely independent of the first spouse as a result of the property division effectuated by the separation agreement —a division which does not occur when one spouse acquires rights in the property pursuant to a joint will.

Courts have cited other reasons for rejecting the practice of categorizing contract beneficiaries as legatees where the decedent has executed a conforming will. These courts acknowledge that technically the contract beneficiary becomes a creditor of the estate only after the decedent breaches the contract by dying intestate or executing a nonconforming will; and that where the decedent executes a conforming will the contract beneficiaries take as legatees under the will. Nevertheless, they note that this analysis leads to the anomalous result that the contract beneficiaries are in a better position where the decedent breaches the contract than where the decedent fully and properly performs in accordance with it. *See In Re Erstein's Estate, supra,* 129 N.Y.S.2d at 321 ("[i]t would be anomalous if the rights of the promisees would be substantially greater in the case of intestacy than they would be had the testator left a will which carried out his promise").

## C.

Other courts have suggested that the resolution of the conflict between the surviving spouse's rights and the rights of contract beneficiaries may be based upon public policy underlying wills statutes. Some courts have held

that the right of election is personal to the surviving spouse and cannot be waived or otherwise defeated by the acts of the deceased spouse. *See Donner, supra,* 364 So.2d at 751–52; *see also Rubenstein, supra,* 225 N.E.2d at 545, 278 N.Y.S.2d at 851 (Bergan, J., dissenting) ("[t]he election is a 'personal right' in a surviving spouse against all wills whenever and however executed"). As the court explained in *Donner, supra,*

> ... [dower] is a personal right which may be exercised only by the widow. [citation omitted] Upon vesting at the death of the spouse, dower is not subject to, affected by, or altered by the acts of the husband, including, but not limited to, contracts which he may have entered into without the wife's actual knowledge or consent.... we conclude that Larna cannot be deprived of any portion of her dower as a result of the unilateral action of her husband in contracting away that right in a property settlement agreement. It cannot be contracted away without her consent.... That right may only be taken away or modified by her voluntary consent, by her own action or by statute. 364 So.2d at 751–52.

Other courts have upheld the surviving spouse's right to claim an elective share over the claims of contract beneficiaries by relying upon the general principle that the right to will property is not absolute, but instead is a privilege afforded the decedent by the State. Under these cases, the State may impose limitations on that privilege, including the condition that all bequests are subject to the surviving spouse's right to claim an elective share. As the court noted in *Erstein's Estate, supra,* the statutory provision for a surving spouse's elective share limits the power of the decedent to dispose of property by will and "[n]o third-party agreement can bestow upon him authority which the State withheld from him." 129 N.Y.S.2d at 323. Consequently, in executing a contract to make a will rather than a contract to make an inter vivos conveyance, a creditor or contract beneficiary must realize that the right to compensation under the contract may be limited by the restrictions which

the State may place upon the ability to devise property. As the court explained, "[a] creditor may make such agreement with his debtor as he chooses but whenever the settlement agreement touches upon a bequest or devise by either of them, both parties must recognize that, just as the power to make a will is subject to conditions and restrictions, so, too, is a contract to make a will." *Id. See also Budde, supra,* 375 A.2d at 986 (noting that a "[r]eview of the historical development of the rights of homestead and dower presently set out in ... [Vermont statutes], clearly reveals a consistent intent on behalf of the Legislature to preserve those rights in their entirety for the preservation of the surviving spouse.... [and] [t]hese rights are of such paramount importance that they are regarded as restraints upon the exercise of another fundamental right—that of testamentary disposition [and thus] [i]t is beyond dispute that any effort to will away such rights must of necessity fail").

Other courts have relied upon the public policy surrounding the marriage relationship as the basis for upholding the surviving spouse's claim to an elective share over the claims of contract beneficiaries. These courts cite the general principle that "contracts in restraint of marriage are void as against public policy, while anything which tends to prevent marriage, or to disturb the marriage state, is viewed by the law with suspicion and disfavor." *Owens, supra,* 45 P. at 713. *See also Bedal, supra,* 218 P. at 648 (indicating that a contract to devise property to a third party could be characterized as a contract in restraint of marriage; and that "inasmuch as the contract for sole heirship would deprive any children subsequently born of their natural rights of inheritance, and would likewise deprive the parents of their right to dispose of property by gift or devise to subsequently born or adopted children, or to a spouse of either on a subsequent marriage, such a type of contract offends against the common instincts of natural loyalty, affection, and duty, and is therefore contrary to the public good and welfare"). They characterize contracts which require a decedent to devise his entire estate to a third party as being

contracts which might restrain or discourage marriage. Therefore, to prevent having these contracts declared void as against public policy, courts have construed the contract to imply that when entering into the agreement the parties contemplated that the testator might remarry. For example, in *Owens v. McNally, supra,* the decedent promised his niece that if she would accompany him to California and live with and care for him, he would leave a will devising her all of the property which he might own at his death. The niece performed her obligations under the contract, living with and caring for the uncle until his marriage several years later. The uncle subsequently died intestate, and the niece sued for specific performance of the contract. The court denied the niece's claim for specific performance, noting that recovery was limited to a claim for quantum meruit. In so ruling, the court also cited the significant interest of the surviving spouse in receiving a share of her husband's estate. The court stated that

> ... while this contract was not void, as against public policy, at the time it was entered into, it must be held that the parties to it contracted in view of the fact that a subsequent marriage by Lawrence McNally might be consummated, and that the effect of this marriage would be to compel a court of equity, in justice to the widow or children, to deny specific performance. Or, viewed in another way, it must have been within the contemplation of the parties that Lawrence McNally might marry; for the contract could not have been designed as a restraint upon his marriage, or it would be void. If it was within their contemplation, and the contract embraced the taking of the deceased's entire estate to the exclusion of any future wife or child, then we have no hesitation in saying that the contract was void as against public policy. The only permissible conclusion, is, therefore, that the parties contracted in contemplation of that event. 45 P. at 713.

*See also Gall, supra,* 19 N.Y.S. at 335 (where the decedent had married after entering into a contract to will his entire estate to a nephew, the court found the "[t]he parties,

whatever their original understanding could never have contemplated a restriction upon the decedent's right to marry or to provide for his children in case such marriage was fruitful. Nor could they have contemplated the taking, by the plaintiff, of the decedent's entire estate, to the exclusion of any such future wife or child.... [for] [i]f such an agreement had been made, it certainly would have been against public policy, and void. Whatever agreement was made was necessarily subject to such possibilities, and was limited by implication accordingly"); *Patecky, supra,* 350 P.2d at 177 (where the decedent had executed a joint will with his first wife leaving their property upon the death of the survivor to their daughter and the husband remarried and executed a second will which left a substantial portion of the estate to his second wife, the court found that "[m]arriage being a natural and desirable relationship in the eyes of the law, it may be said that the possibility of remarriage of either Samuel or Emma [the decedent's first wife] was within their contemplation when the contract was made and became a part thereof. At least, it may not be assumed that they intended an agreement in restraint of marriage"); Sparks, *supra,* at 175–76 (noting that where a decedent has entered into a contract to will his entire estate, it is reasonable to subject the contract to "the implied contingency that the promisor might later marry and thereby subject his estate to a claim of dower in his wife" or to construe the contract as bestowing a claim "for all or a fractional part of what remains after the marital rights of any surviving spouse have been provided for").

## IV.

This case does not present a claim for specific performance because Lester performed his obligation under the contract and died leaving a will which conformed to the contract. Thus, we need not consider whether the superior equities lie with the Personal Representatives or with Lisa Mae.

Because Lester died leaving a will which conformed to the contract, we might consider drawing an analogy between the present case and the divorce cases, wherein courts found that where the decedent died leaving a conforming will, the contract beneficiaries were more properly characterized as legatees rather than contract creditors. Under this approach, we would find the respondents to be legatees under Lester's will whose interest in the estate, like the interest of any other legatee under any will, is subject to the abatement procedure outlined in § 3-208 of the Estates and Trusts Article.[7] Under this procedure Lisa Mae's elective share would have priority over the respondents' claims and their share of the estate would be abated. Nevertheless, we acknowledge, as the court did in *Erstein's Estate, supra,* that this method of resolving the issue of priority leads to the anomalous result that the contract beneficiaries' rights would be greater where the contract is breached than where the testator performs in accordance with its terms. Consequently, we decline to adopt this theory as the controlling law in this case.

Instead, we find the question of priorities between a surviving spouse and beneficiaries under a contract to make a will should be resolved based upon the public policy which surrounds the marriage relationship and which underlies the elective share statute. As we noted previously, "the right of a person to transfer property upon his death to others ... is not a natural right but a privilege granted by the State." *Safe Dep. & Tr. Co., supra,* 181 Md. at 355, 29 A.2d 906. Furthermore, "[t]he right to make a will is a purely statutory right," which the State may limit by statute. *Johns v. Hodges,* 62 Md. 525, 539 (1884). The Legislature on several occasions has limited this right by enacting restrictions such as those contained in § 3-203, which grants a surviving spouse the right to receive an elective

---

7. Section 3-208(b) provides in relevant part that "[i]f there is an election to take an intestate share, contribution to the payment of it shall be prorated among all legatees."

share of a decedent's estate, regardless of the provisions contained in the decedent's will. In addition, § 3–204 suggests that the right to receive the elective share is a personal right, which cannot be waived by the unilateral acts of others, including the actions of the deceased spouse.[8] These statutes and principles of law suggest that there is a strong public policy in favor of protecting the surviving spouse's right to receive an elective share. This Court on other occasions has recognized the strong public policy interest in protecting the surviving spouse's elective share from the unilateral acts of a deceased spouse. For example, in a number of cases this Court has declared transfers in fraud of marital rights to be void. *See, e.g., Mushaw v. Mushaw*, 183 Md. 511, 39 A.2d 465 (1944). *See also* Sykes, *Inter Vivos Transfers in Violation of the Rights of Surviving Spouses*, 10 Md.L.Rev. 1 (1949). We have indicated that this doctrine also applies to transfers made prior to the marriage. *Collins v. Collins*, 98 Md. 473, 484, 57 A. 597 (1904).

◼ In addition to the public policy underlying these statutes, the public policy surrounding the marriage relationship also suggests that the surviving spouse's claim to an elective share should be afforded priority over the claims of beneficiaries of a contract to make a will. Like the majority of other courts, we have recognized the well settled principle that contracts which discourage or restrain the right to marry are void as against public policy. *Bostick v. Blades*, 59 Md. 231, 232–33 (1883). In executing a will, a testator is presumed to know that a spouse might renounce the will, thus extinguishing or reducing legacies contained in the will, and if the testator does not provide for this contingency then the beneficiaries under the will might lose the property left them. *Webster v. Scott*, 182 Md. 118, 121, 32 A.2d 475 (1943); *see also Mercantile Trust Co. v.*

---

**8.** Specifically, § 3–204 provides that "[t]he right of election of the surviving spouse is personal to him. It is not transferable and cannot be exercised subsequent to his death."

*Schloss,* 165 Md. 18, 27–28, 166 A. 599 (1933). Thus, we find that the respondents' rights under the contract were limited by the possibility that the survivor might remarry and that the subsequent spouse might elect against the will. Consequently, we conclude that their claims under the contract are subordinate to Lisa Mae's superior right to receive her elective share.

## V.

Finally, we address the issue of whether Lisa Mae is entitled to a $2000 family allowance under § 3–201. The respondents argue that she is not so entitled because the contractual obligation owed to them exhausted Lester's entire estate and thus there was no estate from which the family allowance could be paid. The circuit court adopted the respondents' interpretation of the law when it found that under § 3–201 there must be an estate from which the allowance can be paid and that in the present case because "there was no remaining estate after the 1974 contractual transfer.... [t]he plaintiff's request for a family allowance" must be denied. A careful reading of the statutes, as well as the case law, pertaining to the widow's allowance indicates that the respondents' argument is without merit and that the circuit court was incorrect in upholding this contention. Unlike § 3–203, § 3–201 does not indicate that the family allowance is derived from the net estate. Instead, § 8–105, which directs the order of payment of debts and claims when an estate lacks sufficient assets to pay all claims, suggests that the family allowance is to receive priority over the claims of creditors and legatees.[9] Section 8–105 indicates that fees to the register, administration expenses, funeral expenses, compensation for the personal representative, payment for legal services, and payment of

---

9. Contrary to the circuit court's finding that "the order of payment outlined in § 8–105 ... is not germane to this case," we find that § 8–105 is an important indication of the Legislature's intent with respect to the priority which is to be accorded a claim for a family allowance.

commissions for real estate brokers enjoy priority over the family allowance, but that the family allowance takes precedence over taxes, medical expenses, rent owed by the decedent, wages for services performed for the decedent, old age assistance claims, and "all other claims." In addition, Maryland Code (1988) § 7–203(b) of the Tax–General Article [formerly § 3–201(b) of the Estates and Trusts Article] exempts the family allowance from the Maryland Inheritance Tax. We find that § 3–201 and § 8–105 indicate that a claim for a family allowance is to be accorded priority over the claims of both ordinary contract creditors and legatees under a will.[10] *See, e.g., Park v. Minton,* 229 Ga. 765, 194 S.E.2d 465, 467 (1972) (holding that a statute, providing for a year's support for the surviving spouse, indicated that the support obligation "is among the necessary expenses of administration and is to be preferred before all other debts except those provided by statute" and thus where the husband had entered into a contract to will property to his first wife's relatives, his second wife's claim for support was superior to legacies given in his will in fulfillment of the contract); *Matter of Estate of Harper,* 138 Ill.App.3d 571, 93 Ill.Dec. 194, 195, 486 N.E.2d 295, 296 (1985) (finding that where testator had executed a joint will to convey all of the survivor's property to certain relatives of the testator and his first wife, the testator's second wife's claim to a support award, as provided for by statute, took priority over the claims of the beneficiaries under the joint will); *Kinne v. Kinne,* 27 Wash.App. 158, 617 P.2d 442, 445 (1980) (finding that where the testator had entered into a property settlement with his first wife in which he obligated his estate to pay his first wife $200 per month, the testator's second wife's claim for a family allowance took precedence over all other claims, including those of the first wife, because "[t]o hold otherwise would conflict with the legislature's intent to exempt such awards from *all* claims

---

**10.** By ordinary contract creditors we mean those who are not specifically described in § 8–105(a)(1)–(10).

for the payment of any debt of the deceased, with specific exceptions not claimed here"); *see also* Lilly, *supra*, 217–18.

The respondents' claim upon the estate of Lester Shimp must be characterized as being either that of a general creditor or of a legatee under the will. Under § 8–105, the family allowance receives priority over the claims of both contract creditors and legatees. Therefore, while the respondents' claim is more properly characterized as being that of a legatee, rather than that of a creditor, regardless of which characterization is used, Lisa Mae's claim for a family allowance takes precedence over the respondents' claim. Therefore, Lisa Mae is entitled to receive the family allowance provided for in § 3–201.

■ In addition, the will executed by Lester and Clara Shimp suggests that the testators intended that those claims specifically described in § 8–105(a) be paid prior to the distributions to the respondents, as provided for in Item I.B. (1)–(4) of the will. Specifically, the will directs that the bequests contained in Items I.A. and I.B. be made "[a]fter the payment of all just debts and funeral expenses ..." In *Matter of Estate of Harper,* the court, construing similar language,[11] found that "[t]he agreement between the testators clearly provided for the claims against the estate to be paid.... [and that] [t]he directive to pay all claims was a direction to pay a surviving spouse's award." 93 Ill.Dec. at 195, 486 N.E.2d at 296. Accordingly, we find that Lester and Clara Shimp's direction that all just debts be paid prior to the bequests included any claim for a family allowance and thus that under the will itself, Lisa Mae's claim for a family allowance takes precedence over the bequests made to the respondents.

In so ruling, we reject the respondents' argument that, as a result of Lester having contracted to will his entire estate, no estate existed upon his death, from which Lisa Mae's

---

**11.** In *Harper,* the testators' joint will provided that prior to the payment of bequests "all of our just debts and funeral expenses should be paid."

claim for a family allowance could be paid. This argument, carried to its logical extreme and applied to the other claims listed in § 8–105, would allow a testator, merely by entering into a contract to will his entire estate, to avoid all his debts including the cost of administration, funeral expenses, and taxes. This anomaly was precisely the sort of situation which § 8–105 was designed to avoid, and we, therefore, find that the respondents' argument is completely without merit. *See Wides, supra,* 184 S.W.2d at 582 (rejecting the claim of a beneficiary, under a contract to will the entire estate, that there was no estate from which a widow's elective share could be paid, noting that "[n]o claim would, of course, be made that the decedent' debts and cost of administration should not be first deducted nor that any lien existing upon the property should not be recognized"); *In Re Kidd's Estate,* 188 N.Y. 274, 80 N.E. 924, 924–25 (1907) (rejecting a contract beneficiary's claim that where the testator had entered into a contract to will his entire estate to her there was no estate from which the estate tax obligation could be paid).

We thus conclude that Lisa Mae Shimp is entitled to receive an elective share under § 3–203 and a family allowance under § 3–201.

JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEES.